UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| NATIONAL CREDIT UNION | ) | CASE NO.: 5:16CV455 |
| ADMINISTRATION BOARD, acting in its | ) | |
| capacity as Liquidating Agent for G.I.C. | ) | JUDGE SARA LIOI |
| Federal Credit Union, | ) | |
| | ) | Magistrate Judge George J. Limbert |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | |
| | ) | ORDER |
| LYNN A. BASCONI, *et al.*, | ) | |
| | ) | |
| Defendants. | ) | |

This matter was referred to the undersigned for resolution of discovery-related issues that have developed in this case.  ECF Dkt. #84.  Pursuant to the Order issued by the undersigned on January 20, 2017, Defendants Ciuni & Panichi, Inc. ("C&P"), Lynn A. Basconi, Robert J. Smolko, and Charles Ciuni (collectively, the "Defendants"), and Plaintiff National Credit Union Administration Board ("Plaintiff"), acting in its capacity as liquidating agent for G.I.C. Federal Credit Union ("GIC"), filed simultaneous briefs on February 3, 2017.  ECF Dkt. #85, #90, #91.  On February 10, 2017, the Defendants and Plaintiff both submitted responses to the opposition's brief.  ECF Dkt. #92, #94.  A hearing was held before the undersigned on February 17, 2017, with Plaintiff represented by Samuel J. Lauricia III and Walter A. Scott Lucas, and the Defendants represented by Amanda M. Gatti and Jason D. Winter.

Plaintiff and Defendants have raised numerous discovery-related issues in the briefs and the responses thereto.  The undersigned is inclined to first address the discovery issues raised by

1

Plaintiff, followed by a discussion of the discovery issues raised by the Defendants.  A summary will be provided at the end of this Order.

**I.**    **DISCOVERY-RELATED ISSUES PRESENTED BY PLAINTIFF**

Plaintiff alleges that the Defendants' discovery responses are deficient for the failure to:

A)    Respond to Plaintiff's request for identification of other federally-insured credit unions the Defendants audited;[1]

B)    Identify the Defendants' work papers for the years 2006, 2007, and 2008;

C)    Provide internal audit manuals, and personnel files (including communications relating to Defendant Basconi's termination of employment) for personnel that worked on the [GIC] audits; and

D)    Provide search terms for electronically stored information ("ESI").

ECF Dkt. #91 at 3.  In the brief, Plaintiff also responds to the Defendants' discovery-related issues; however, this discussion is more properly addressed below in Section II of this Order.  *See* ECF Dkt. #91 at 11-14.

Additionally, in the response to the Defendants' brief, Plaintiff raises an additional discovery dispute.  ECF Dkt. #94 at 8.  As for the substance of the additional discovery dispute, a letter, dated February 9, 2017, that was exchanged with opposing counsel is cited by Plaintiff as containing the basis for the dispute.  *Id.*  In the letter to opposing counsel, Plaintiff states:

We regretfully must address an issue that became apparent after we had an opportunity to review [GIC's] [ESI].  Specifically, it became apparent that your clients' responses to discovery requests were deficient and incomplete, at best, after comparing same to GIC's ESI.  Your clients' apparent selective production of emails and work papers has unduly prejudiced [Plaintiff's] ability to effectively prosecute its case.

_____

[1]Plaintiff's brief regarding the instant discovery dispute indicates that Plaintiff is seeking information regarding audit services performed on behalf of other credit unions.  ECF Dkt. #91 at 5-6.  At the hearing, Plaintiff made clear that it was only seeking information regarding other federally-insured credit unions.

2

ECF Dkt. #94-1 at 1.  The letter further states the grounds for Plaintiff's concerns.  *See id.*

Continuing, Plaintiff indicates that the Defendants provided in excess of 8,000 pages of documents with no visible demarcation within the documents to determine to what years the documents pertain or to allow proper classification of the documents.  ECF Dkt. #91 at 4.  Plaintiff states that since Defendant C&P was GIC's auditor for over twenty consecutive years, it is important to identify which of the thousands of documents relate to the specific years at issue and to determine the work papers for each year at issue.  *Id.*  For these same reasons, Plaintiff asserts that it is important to obtain marketing materials, and "determine relevant experience and deviations of work conducted to address justiciable issues in this case."  *Id.*  The undersigned will address each discovery-related issue in turn.

### A.      Identification and Documentation of Other Federally-Insured Credit Unions Audited by Defendant C&P

Plaintiff first asserts that it is seeking information regarding audit services performed by Defendant C&P on behalf of other federally-insured credit unions.[2]  ECF Dkt. #91 at 5.  Similarly, Plaintiff seeks the identity of credit unions for which Defendant Baconi and Defendant Smolko provided professional services.  *Id.*  At the hearing, Plaintiff indicated that it was requesting a list of all federally-insured credit unions audited by Defendant C&P as well as any audit reports and work papers prepared for these credit unions.[3]  Further, Plaintiff stated at the hearing that it was

---

[2]*See* n. 1, *supra.*

[3]At the hearing, Plaintiff did not address why it separately sought the identity of the credit unions for which Defendant Bosconi and Defendant Smolko provided professional services.  Presumably, this issue was not addressed because these credit unions would be encompassed in the request for a list of all credit unions to which C&P provided professional services.  In any event, it was made clear at the hearing that Plaintiff was only seeking information regarding other federally-insured credit unions.

seeking these documents for the time period of 2005 to 2010, although Plaintiff later stated that it was "willing to modify and concede to limit the years from not going back to 2000."

Continuing, Plaintiff claims that the Defendants' objection on the basis of relevancy and privilege was improper because the objection was not stated with specificity.  ECF Dkt. #91 at 5.  Plaintiff asserts that the requested information is relevant, especially since a document in the Defendants' work papers with the year 2010 noted thereon was titled "Illustrative Financial Statements for a Credit Union."  *Id.*  According to Plaintiff, since the allegations in the Complaint relate to years prior to 2010, the extent of the Defendants' experience is relevant and that by the year 2010 the Defendants "would not require illustrative financial statements for a credit union."  *Id.* at 5-6.  At the hearing, Plaintiff added that Defendant C&P claimed to be experts in advising federally-insured credit unions when addressing the relevancy of information related to how Defendant C&P treated the accounts of other federally-insured credit unions, and that Plaintiff had narrowly drawn its request.

The Defendants contend that the information pertaining to other credit unions is irrelevant and confidential.  ECF Dkt. #92 at 3.  Continuing, the Defendants assert that Plaintiff's request seeks documents that may not bear any similarity to the subject matter in this case.  *Id.* at 5.  The Defendants discuss two cases in support of their position.  First, the Defendants cite *In re One Bancorp Securities Litigation,* 134 F.R.D. 4, 11 (D. Me. Feb. 14, 1991), a case in which the court denied as overly broad the plaintiff's request for documents from a defendant with respect to "clients that are in the same or similar businesses as One Bancorp."  While the discovery request made in *In re One Bancorp Securities Litigation* was broader than Plaintiff's discovery request insofar as it

4

sought information relating to "similar businesses" and Plaintiff seeks information relating only to other federally-insured credit unions, the requests are similar in nature.

In the second case discussed by the Defendants, *Amcast Industrial Corp. v. Detrex Corp.*, 138 F.R.D. 115 (N.D. Ind. July 15, 1991), the plaintiff sought all writings relating to or describing any clean-ups, removal actions, remedial actions, remedial investigations, or feasability studies in which the defendant had participated or been involved.  Despite recognizing that this discovery request may produce some relevant information, the *Amcast* court denied the plaintiff's motion to compel discovery relating to this request, stating that the request was unlimited as to its time frame and was not merely a "fishing expedition," and was instead an "effort to 'drain the pond and collect the fish from the bottom.'" *Id.* at 120-21.

While it is understood that Plaintiff's discovery request is not as broad as the discovery request made in *Amcast*, the undersigned agrees with the Defendants that Plaintiff's discovery request seeking the production of a list of all federally-insured credit unions audited by Defendant C&P, as well as any audit reports and work papers prepared for those credit unions, is overly broad. Plaintiff is seeking production of these documents for a five-year period without asserting how these documents relate to this case beyond claiming that the documents will allow Plaintiff to determine whether the Defendants deviated from their typical standard of care when dealing with GIC.

As detailed below, the undersigned is ordering the production of additional documents that Plaintiff claims will allow it to determine whether the Defendants were negligent when handling GIC's account.  While production of the requested information regarding the Defendants' other clients that are or were federally-insured credit unions may produce some relevant information, the request is overly broad as Plaintiff has not indicated what information is likely to be produced that

5

may be useful beyond stating that it wants to use the production as a comparison. Plaintiff has requested similar documents similar to those sought from the Defendants from all federally-insured credit unions serviced by the Defendants. This is likely to place a significant burden on the Defendants. Further, the undersigned is not persuaded by Plaintiff's sole citation to the document produced by the Defendants that was marked "2010" and titled "Illustrative Financial Statements for a Credit Union." *See* ECF Dkt. #91 at 5-6. Plaintiff appears to suggest that this document shows that the Defendants were not as experienced as they claimed in preparing financial statements for credit unions since they were in possession of illustrative financial statements. *See id.* However, it is just as possible that the Defendants maintained illustrative financial statements to ensure that the highest standards were maintained, rather than requiring illustrative financial statements to draw from due to incompetence. In any event, the existence of an illustrative financial statement from 2010 does not provide justification for Plaintiff's production request.

### B.       Work Papers from 2006, 2007, and 2008, and Audit Manuals

Plaintiff next seeks Defendant C&P's work papers, categorized by the relevant audit years. ECF Dkt. #91 at 6. Continuing, Plaintiff states that the applicable auditing standards generally require an auditor to maintain sufficient documentation such that an experienced auditor that is otherwise unconnected to the audit could review and replicate the audit procedures. *Id.* Plaintiff states that compliance with this auditing standard is simply impossible if Defendant C&P maintains its audit records in the same manner the records were produced to Plaintiff. *Id.* Further, Plaintiff indicates that it has retained an expert to opine as to the Defendants' deviation from the applicable standards of care, and that the Defendants' response is simply that roughly 8,000 plus pages of documents have already been produced. *Id.* Plaintiff also notes that many of the pages produced

6

by the Defendants do not contain dates, making it impossible for Plaintiff to identify the work papers for any particular audit year.  *Id.*

At the hearing, Plaintiff acknowledged that the Defendants had offered to allow Plaintiff to image the hard drive and software upon which the produced documents were stored, but expressed concern that this would only result in the production of the same documents already produced and leave open the question as to the audit year corresponding to each document.  Plaintiff also stated the belief that the Defendants' audit manuals constituted work papers, and that the Defendants did not need to worry about producing proprietary documents because a protective order exists in this case.[4]

The Defendants contend that all of the work papers in custody and control of Defendant C&P have been produced.  Continuing, the Defendants state the work papers were produced "in the normal course of business under Federal Rule 34," and thus there is no additional discovery obligation on behalf of the Defendants regarding the working papers.

As to the audit manuals, the Defendants rely partially on the following quote from *In re Worlds of Wonder Securities Litigation*, 147 F.R.D. 214, 216 (N.D. Cal. Nov. 5, 1992):

> The audit manuals do not establish the standards against which the defendant's conduct or the plaintiff's audit is to be measured.  That standard is established by [Generally Accepted Auditing Standards] and [Generally Accepted Accounting

---

[4]Plaintiff also states that the Defendants "accepted the engagement each year with knowledge that all work papers were subject to production," and that "[c]ertainly [the] Defendants were aware of the NCUA's Supervisory Committee Manual for Federal Credit Unions, which at Section 3.06 requires independent compensated auditors to make available and produce, among other things, proprietary audit programs and retained reviewer notes."  No agreement was provided by Plaintiff for review, and the cited portion of the "NCUA's Supervisory Committee Manual for Federal Credit Unions" was likewise not provided, making these assertions by Plaintiff difficult to evaluate. In any event, the undersigned is ordering that the audit manuals be produced to Plaintiff, thereby rending this portion of Plaintiff's argument moot.

Principles], publically disseminated standards recognized throughout the accounting industry.

ECF Dkt. #92 at 6.  Continuing, the Defendants indicate that many district courts follow the reasoning displayed in *In re Worlds of Wonder Securities Litigation* and consider internal audit manuals to be confidential, proprietary, irrelevant, and not subject to discovery.  *Id.* (internal citations omitted).  Plaintiff cites two cases in which courts held that audit manuals were discoverable despite containing proprietary information.  ECF Dkt. #92 at 7 (citing *Gohler v. Wood*, 162 F.R.D. 691 (D. Utah Apr. 19, 1995); *Fields v. Oliver's Stores, Inc.*, No. 87 Civ. 0894, 1991 WL 44845 (S.D.N.Y. Mar. 2, 1990)).  The Defendants claim that Plaintiff's reliance on these two cases is misplaced because, unlike the instant case, the plaintiffs in those two cases alleged fraud or reckless misconduct against the defendants in connection with the audit performed.  ECF Dkt. #92 at 7.  Additionally, the Defendants assert that disclosure of the audit manuals is against public policy as it would constitute the use of professional standards, created by auditors, against those same auditors, and that this practice would result in auditors ceasing to create higher standards for themselves.  ECF Dkt. #92 at 7.  According to the Defendants, this unwillingness to set higher standards will result in less protection for the public.  *Id.*

Having considered the arguments presented by the parties, the undersigned orders that the Defendants produce to Plaintiff the work papers from 2006, 2007, and 2008, categorized by relevant audit years.  Currently, many of the roughly 8,000 pages of work papers do not indicate the audit year corresponding to the document, making these portions of the Defendants' production largely useless for the purposes of this case.  Continuing, the Defendants cite Fed. R. Civ. P. 34 when claiming that their production was made "in the normal course of business," and that no further discovery obligation exists as to these documents.  The Defendants' claim that the work papers were

8

produced "in the normal course of business" leads to a number of questions as to why no dates are

discernable on a number of the documents.  As it stands, the Defendants prepared the work papers

in connection with their auditing responsibilities to GIC, the credit union now being liquidated by

Plaintiff, at a time during which GIC was the victim of an embezzlement scheme involving over

eight million dollars.  The year in which the working papers were produced is highly relevant to this

case, and, since the Defendants now claim that their normal course of business was to create and rely

on undated work papers, the Defendants are in the best position to identify the audit year in which

these work papers were created.  Additionally, placing the responsibility of identifying the audit year

of the documents produced by the Defendants on Plaintiff would be a large burden, likely requiring

an arduous series of depositions.

The undersigned further orders the Defendants to produce the requested audit manuals.  An

additional passage from *In re Worlds of Wonder Securities Litigation* provides additional guidance

beyond the portion of that case relied upon by Plaintiff:

> Both sides quote a number of unpublished cases to show that this or that magistrate
> judge ordered audit manuals produced or ordered that they not be produced.  What is
> clear is that it is up to the court's discretion to determine the merits of each individual
> case.

147 F.R.D. at 217.  The Defendants' assertion that the audit manuals are irrelevant is not well taken.

The audit manuals likely contain the methodology, tools, and checklists associated with the audit.

This information is relevant when evaluating the manner in which the Defendants conducted GIC's

audits.  As for the Defendants' concern that the audit manuals contain confidential and proprietary

information, a protective order has been issued in this case.  ECF Dkt. #88.  Any confidential and/or

proprietary information contained in the audit manuals will be subject to this protective order.  The

Defendants also raised the concern that the protective order will not protect this information from

9

being disclosed to any experts utilized in this case.  However, this risk is typical in these types of cases, and, if an expert does utilize any proprietary information or trade secret, the Defendants have the option to take legal action.  Likewise, the Defendants' argument that ordering the production of the audit manuals is against public policy is not well taken as the value of the production of the audit manuals in this case is likely high, especially considering the fashion in which the Defendants produced their initial discovery, which provided less than complete information regarding Defendant C&P's audit practices as they pertained to GIC.

For these reasons, the undersigned orders the Defendants to produce to Plaintiff the 2006, 2007, and 2008 work papers, categorized by relevant audit years.  Further, the Defendants are ordered to produce the requested audit manuals to Plaintiff.

### C.      **Personnel Files and Billing Records**

Plaintiff seeks personnel files and related documents for all employees of Defendant C&P that worked on the GIC audits.  ECF Dkt. #91 at 8.  According to Plaintiff, the Defendants improperly reduced the scope of the discovery request to apply only to Defendant Basconi, as if she was the only employee that worked on the GIC audits, when, in fact, at least four additional individuals also worked on the GIC audits.  *Id.* at 8-9.  Plaintiff also indicates that it seeks additional information regarding Defendant Basconi's termination or resignation from C&P.  *Id.* at 9.  At the hearing, Plaintiff indicated that the Defendants have agreed to produce supplemental information to satisfy the request regarding Defendant Basconi's termination or resignation.[5]

_____

[5]At the hearing, Plaintiff also indicated that the Defendants have agreed to produce the requested marketing materials.  *See* ECF Dkt. #91 at 3, n.2.

10

The Defendants contend that the personnel files are irrelevant and that ordering the production of said files is against public policy. ECF Dkt. #92 at 7-8. Specifically, the Defendants assert that production of the personnel files is against public policy because production would discourage employers from making candid critiques of employees due to the fear of having those critiques exposed and used against the employer in litigation. *Id.* The Defendants' arguments are not well taken. The personnel files requested by Plaintiff are not irrelevant, as they likely contain relevant information on the employees of Defendant C&P who were responsible for providing auditing services to GIC during the period in which GIC was subjected to an embezzlement scheme ultimately resulting in a loss of over eight million dollars. Further, production of the requested personnel files is not against public policy as there is a protective order in place in this case, and personnel files are already routinely disclosed in litigation.[6] Accordingly, the Defendants are ordered to produce the personnel files for all employees of C&P that worked on GIC's audits.

Plaintiff also requests time sheets and invoices, at times referred to collectively as "billing records" during the hearing, from 2009 to 2012. ECF Dkt. #91 at 7. At the hearing, Plaintiff indicated that the Defendants had produced time sheets with a number of the pages redacted, and that no invoices had been produced. The Defendants contend that time sheets have already been produced. ECF Dkt. #92 at 2-3. The parties appear to be in agreement that the relevant time sheets were produced, however, Plaintiff takes issue with the redactions. The Defendants have not explained why portions of the time sheets were redacted, or how the redacted portions of the time

---

[6]The parties cite case law supporting their respective positions as to whether personnel files are discoverable. ECF Dkt. #91 at 8; ECF Dkt. #92 at 8. None of the case law cited is binding on this Court.

sheets constitute privileged information. *See id.* at 2-3. Additionally, the Defendants make no mention of invoices in their brief, and did not speak to the issue at the hearing.

The Defendants do not dispute that the time sheets and invoices are discoverable, and do not provide an explanation for redacting portions of the time sheets. The undersigned finds that the time sheets and invoices from 2009 to 2012 are relevant as claims made by Plaintiff against the Defendants extend into these years. Accordingly, the Defendants are ordered to produce the time sheets without redactions for the years 2009 to 2012. For these same reasons, the undersigned orders that the Defendants produce invoices for the years 2009 to 2012.

### D. Search Terms

Plaintiff also requests that the Defendants identify the search terms used when the Defendants reviewed their ESI.[7] ECF Dkt. #91 at 10. The Defendants contend that search terms were not utilized when compiling their ESI. ECF Dkt. #92 at 3. Neither party provided further explanation of this issue at the hearing. The undersigned will not order the Defendants to produce search terms when they claim that no such search terms exist. However, the Defendants are ordered to produce any search terms used when compiling and reviewing ESI as the result of this Order.

### E. Additional Discovery Dispute

In its response brief, Plaintiff first raises the issue that there might be additional discovery disputes, relying on a letter sent to the Defendants' counsel as support. ECF Dkt. #94-1. Neither the letter nor Plaintiff's brief indicate what action Plaintiff asks the Court to take regarding the alleged deficiencies in the Defendants' production, and this additional discovery dispute was not

---

[7]At the hearing, Plaintiff indicated that the Defendants have agreed to share the search terms related to the review of ESI regarding Defendant Basconi's termination or resignation.

addressed at the hearing, other than a brief mention by Plaintiff of one of the documents discussed in the letter near the end of the hearing. The documents mentioned in the letter do not involve Plaintiff's request for production regarding Defendant C&P's business dealing with other federally-insured credit unions, and undersigned is finding in Plaintiff's favor on all other discovery-related issues. At this time, Plaintiff simply has not provided enough information regarding these additional potential discovery disputes to enable the undersigned to determine whether the potential disputes have been rendered moot or to resolve the potential disputes. That being said, the Defendants are of course obligated to comply with the rules of discovery and produce all information in accordance with the rules.

## II. <u>DISCOVERY-RELATED ISSUES PRESENTED BY THE DEFENDANTS</u>

The discovery-related issues raised by the Defendants stem from Plaintiff's responses to Interrogatories and Requests for Admission ("Requests") issued by the Defendants. Although Plaintiff objected to numerous Interrogatories and Requests, the reason for the objections was consistent throughout and can be illustrated by the following answer to one of the Defendants' Interrogatories:

> 8.    For each individual in Your Answer to Interrogatory No. 7, *supra*, list any and all experience that [member of GIC's supervisory committee] has in the areas of bookkeeping, accounting, and/or auditing including the type of experience, years of experience, and any degrees, certifications or licenses.

> ANSWER: In addition to the General Objections set forth above, [Plaintiff] objects to this Interrogatory on the grounds that it is vague, ambiguous, overly broad, and unduly burdensome. Further, [Plaintiff] objects to this Interrogatory on the basis that the information requested is more readily accessible and can be obtained from individuals or third parties - including the supervisory committee members themselves - other than [Plaintiff].

ECF Dkt. #90-2 at 5.[8]

The Defendants assert that "[f]or all intents and purposes, [Plaintiff] is [GIC]."  ECF Dkt. #90 at 2.  Continuing, the Defendants argue that although GIC may no longer physically exist, its rights and abilities to pursue claims against the alleged tortfeasors survive through Plaintiff.  *Id.*  The Defendants take issue with Plaintiff's refusal to provide substantive responses to Interrogatories and Requests, and Plaintiff's claim that information sought in the Interrogatories and Requests is "in the possession of other parties or individuals," or is "more readily accessible and can be obtained from individuals or third parties."  *Id.* (internal citations omitted).

According to the Defendants, Plaintiff cannot claim that it is simply the liquidating agent and thus it has no duty to provide information that GIC would otherwise have the obligation and/or ability to disclose.  *Id.*  The Defendants argue that Plaintiff "may not utilize the separate identity of the defunct corporation as a litigation sword" and evade discovery by claiming it lacks custody and/or control of the information sought by the Defendants.  *Id.* at 2-3.  Further, the Defendants claim that Plaintiff is "standing in the shoes" of GIC, and is thus obligated to "secure such information from its assignor as it can" in order to respond to the Defendants' discovery requests.  *Id.* at 3.  The Defendants conclude their brief by claiming that Plaintiff cannot persuasively assert that GIC still maintains some separate and independent identity in order to evade discovery, and stating that Plaintiff must respond with any information and/or documents that would otherwise be in possession and/or control of GIC.  *Id.* at 6.  According to the Defendants, allowing otherwise

---

[8]The complete set of Interrogatories and Request to which Plaintiff has objected can be found in ECF Dkt. #90-2 and ECF Dkt. #90-3.

"would empower agencies alike to seek out nearly every valuable case against third-party professionals of their insureds by assignment as an end-run around discovery."  *Id.*

Plaintiff contends that it does not have control of the requested information or the individuals with knowledge.  ECF Dkt. #94 at 4.  Specifically, Plaintiff asserts that it does not have control over the additional requested information as it has turned over all requested documents to the Defendants, which amounted to tens of thousands of pages.  *Id.* at 4.  Continuing, Plaintiff claims that it does not have a special relationship to the persons with knowledge that creates a duty to conduct the requested discovery.  *Id.*  Plaintiff states that the liquidation of GIC was not a negotiated transfer or rights, as is the case with a business contract or voluntary assignment for payment, and that there is no special relationship, or any relationship for that matter, between Plaintiff and GIC's former employees, officers, and directors, many of which are represented by separate counsel and have potentially diverging legal interests.  *Id.* at 4-5.

Plaintiff's argument is meritorious.  The Defendants cite a number of cases in support of their position, however, these cases are factually distinct from the circumstances presented in the instant case.  Specifically, most of the cases cited by the Defendants present facts in which a negotiated transfer of rights took place in the form or an assignment, a subrogation of rights, or on the basis of a corporate parent relationship.  *See* ECF Dkt. #90 at 3-6 (citing *Brunswick Corp. v. Suzuki Motor Co.*, 96 F.R.D. 684 (E.D. Wis. Nov. 30, 1983); *In re Skelaxin Metaxalone Antitrust Litig.*, 299 F.R.D. 555 (E.D. Tenn. Jan. 30, 2014); *Fireman's Mut. Ins. Co. v. Erie-Lackawanna Railroad Co.*, 35 F.R.D. 297 (N.D. Ohio June 4, 1964); *Travelers Indem. Co. Of America v. Kendrick Bros. Roofing, Inc.*, No. 1:10-cv-00604, 2013 WL 6681240 (D. Idaho Dec. 18, 2013); *JPMorgan Chase Bank, N.A. v. KB Home*, No. 2:08-cv-1711, 2010 WL 1994787 (D. Nev. May 18, 2010); *Bank of*

15

*New York v. Meridien BIAO Bank Tanzania Ltd.*, 171 F.R.D. 135 (S.D.N.Y. Mar. 21, 1997).[9]  In the instant case, Plaintiff is acting as the liquidating agent of GIC rather than as an assignee, there has been no subrogation of rights, and there is no corporate parent relationship.

The Defendants also cite *Wallis v. Centennial Ins. Co.*, No. 2:08-cv-2558, 2013 WL 528472 (E.D. Cal. Feb. 11, 2013).  In *Wallis*, the court denied the defendants' objection to discovery requests on the basis that the defendants had not made a reasonable inquiry to secure information that was readily obtainable from persons and documents within their relative control and to fully state those efforts.  *Id.* at *4.  In the instant case, Plaintiff has turned over tens of thousands of documents in GIC's possession, and it cannot be said that the members of GIC's supervisory committee are in Plaintiff's relative control  as nearly all of the supervisory committee members are represented by independent counsel and likely have divergent legal interests.[10]  For this same reason, Plaintiff does not have a special relationship with the supervisory committee members. Accordingly, the reasoning in *Wallis* is not applicable to the present case.

Likewise, *FDIC v. Hutchins*, No. 1:11-CV-1622, 2013 WL 12109446 (N.D. Ga. Oct. 25, 2013), is not directly applicable to the instant case.  In *Hutchins*, the court held that the fact that "the FDIC had no pre-failure involvement with BankFirst does not, standing alone, relieve it of its obligation to designate a responsive Rule 30(b)(6) deponent."  2013 WL 12109446, at *3.  Unlike the FDIC in *Hutchins*, Plaintiff is not refusing to "create a witness," but instead asserting that it has no control over or a special relationship with the individuals with knowledge of the information

---

[9]These cases are cited herein in the sequence in which the Defendants present each case in their brief. *See* ECF Dkt. #90 at 4-5.

[10]The Defendants have brought the members of GIC's supervisory committee into this lawsuit as third party defendants, and their legal representatives may be viewed on the docket.  *See* ECF Dkt. #11.

sought by the Defendants. *See* ECF Dkt. #94 at 4-8. For the above stated reasons, namely, that it cannot be said that the members of GIC's supervisory committee are in Plaintiff's relative control as nearly all of the supervisory committee members are represented by independent counsel and likely have divergent legal interests, and since Plaintiff does not have a special relationship to the supervisory committee members for these same reasons, the instant case is factually distinct from *Hutchins.*

Plaintiff is in no better position than the Defendants to learn the facts responsive to the Interrogatories and Requests to which Plaintiff objected, and the Defendants can obtain the information sought from the members of GIC's supervisory committee. *See Goldstein v. FDIC*, No. ELH-11-1604, 2013 WL 8446551, *2 (D. Md. May 23, 2013) (holding that the FDIC could have no knowledge of K Bank's policies, procedures, relationships, or actions since the underlying events took place prior to the date the FDIC was appointed receiver, and finding that the FDIC was in no better position than the plaintiff to "learn such facts from the documents produced and [the plaintiff] can obtain the information he seeks from the officers of K Bank and K Capital, who created the documents and have knowledge of their own procedures and relationships"). To answer the Interrogatories and Requests to which Plaintiff has objected, Plaintiff would almost certainly be required to depose the members of the supervisory committee, and then answer the Interrogatories and Requests with the information learned during the depositions. As Plaintiff is in no better position than the Defendants to provide the information sought in the Interrogatories and Requests to which Plaintiff objected, the undersigned denies the Defendants' request to order Plaintiff to respond to the discovery requests discussed herein.

**III.**     **SUMMARY**

Based on the instant Order, the Defendants are to produce to Plaintiff all of the following:

1.      Work papers from 2006, 2007, and 2008, categorized by relevant audit years;

2.      The audit manuals, as requested by Plaintiff;

3.      Personnel files for all employees of Defendant C&P that worked on GIC's audits;

4.      Time sheets from 2009-2012 without redactions;

5.      Invoices from 2009-2012; and

6.      Any search terms used when compiling and reviewing ESI as the result of this Order.

The Defendants shall complete the production required by this Order by March 17, 2017, to afford

Plaintiff an opportunity to review the production prior to the close of the discovery period on March

31, 2017.

IT IS SO ORDERED.


DATE: February 27, 2017                    _/s/  George J. Limbert_____
                                          GEORGE J. LIMBERT
                                          UNITED STATES MAGISTRATE JUDGE

18