# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF OHIO
# EASTERN DIVISION

| | |
|---|---|
| NATIONAL CREDIT UNION ADMINISTRATION BOARD, acting in its capacity as Liquidating Agent for G.I.C. Federal Credit Union, | ) CASE NO. 5:16-cv-455 ) ) ) JUDGE SARA LIOI ) |
| PLAINTIFF, | ) **MEMORANDUM OPINION** ) **AND ORDER** |
| vs. | ) ) |
| CIUNI & PANICHI, INC., et al., | ) ) |
| DEFENDANTS. | ) |

Plaintiff National Credit Union Administration Board ("NCUA Board" or "plaintiff") has filed two motions: (1) Motion to Dismiss Ciuni & Panichi, Inc.'s Counterclaims[1] (Doc. No. 23 ["MTD"]),[2] and (2) Motion to Strike Certain of Defendants' Affirmative Defenses (Doc. No. 15 ["M-Strike."]).[3] For the reasons set forth herein, the motion to dismiss counterclaims (Doc. No. 23) is granted and the motion to strike affirmative defenses (Doc. No. 15) is denied.

## I. BACKGROUND

The National Credit Union Administration ("NCUA") is an independent agency of the executive branch of the United States government that insures all federal and most state-chartered credit unions. The NCUA is managed by the NCUA Board pursuant to 12 U.S.C. § 1752a(a). (Complaint, Doc. No. 1 ["Compl."] ¶ 1.) On February 26, 2016, plaintiff NCUA Board, acting in

---

[1] The counterclaims are asserted by all of the defendants: Ciuni & Panichi, Inc., Lynn A. Basconi, Robert J. Smolko, and Charles M. Ciuni (collectively, "C&P" or "defendants").

[2] C&P has opposed this motion (Doc. No. 42 ["Opp'n MTD"]), and plaintiff has replied (Doc. No. 51 ["Reply MTD"]).

[3] C&P has also opposed this motion (Doc. No. 16 ["Opp'n M-Strike"]), and plaintiff has replied (Doc. No. 22 ["Reply M-Strike"]).

its capacity as Liquidating Agent for G.I.C. Federal Credit Union ("GIC"), filed a complaint asserting claims against the defendants for professional negligence, gross negligence, and breach of three separate contracts between defendants and GIC. The complaint alleges that, on December 13, 2012, GIC was placed into involuntary liquidation due to insolvency. (*Id.* ¶ 13.) The liquidation was triggered by the discovery that William Memmer ("Memmer"), a long-time officer and employee of GIC, had committed a massive, multi-year fraud against GIC by overstating its assets by over $9 million, resulting in a loss to the National Credit Union Share Insurance Fund ("NCUSIF") of more than $8 million. (*Id.*)[4]

At all relevant times, defendant C&P had served as GIC's outside independent auditor,[5] required to perform services in accordance with Generally Accepted Auditing Standards ("GAAS"). (*Id.* ¶ 15.) Plaintiff alleges that, during the time Memmer was carrying out his fraud, "Defendants failed to discover that millions of dollars of GIC assets that Defendants reported on their published financial statements for each of the years 2006, 2007, and 2008 did not exist. . . . Defendants repeatedly, and erroneously, issued clean opinions stating that the asset accounts listed in GIC's financial statements were fairly and accurately stated. Overlooking colossal misstatements of assets and nonexistent internal controls, Defendants continued to negligently perform auditing services for GIC." (*Id.* ¶ 16.) Plaintiff alleges that, "[absent] Defendants' misfeasance, Memmer's substantial misstatement of assets would have been discovered by early 2007 . . . and Plaintiff's damages would have been avoided." (*Id.* ¶ 17.)

---

[4] Memmer pleaded guilty to various federal crimes and was ordered to pay restitution of $7,084,827.12. Additionally, the Liquidating Agent received a $1 million payment from a fidelity bond. (Compl. ¶ 13 n.2.)

[5] The three individual defendants were all employed by C&P as certified public accountants. (Compl. ¶¶ 4-6.)

On April 26, 2016, C&P filed an answer and counterclaim, which it amended on April 29, 2016. In addition to denying most of the allegations of the complaint, C&P asserts 27 affirmative defenses in its answer. In the counterclaim, C&P seeks a declaratory judgment "as to the rights of C&P and responsibilities of [GIC], its employees, officers, committees, directors and members under the letters of engagement." (Counterclaim (Doc. No. 10) ["Countercl."] ¶ 12.) It also seeks to hold the Liquidating Agent (NCUA Board) liable for GIC's breach of contract and on a theory of promissory estoppel.

## II. DISCUSSION

**A.   Plaintiff's Motion to Dismiss C&P's Counterclaims (Doc. No. 23)**

Plaintiff moves to dismiss C&P's counterclaims under Fed. R. Civ. P. 12(b)(1) (lack of subject matter jurisdiction) and Fed. R. Civ. P. 12(b)(6) (failure to state a claim). Plaintiff asserts that C&P is statutorily precluded from asserting claims against the NCUA Board and, as a consequence, this Court lacks jurisdiction to address the counterclaims. Plaintiff further asserts that C&P's sole remedy is through the administrative claims process set forth in the Federal Credit Union Act of 1934 ("FCUA").[6]

Under 12 U.S.C. § 1787(a)(1), once the NCUA Board finds that a federal credit union is bankrupt or insolvent, "the Board shall close such credit union for liquidation and appoint itself liquidating agent therefor." The Board, as Liquidating Agent, succeeds to "all rights, titles, powers, and privileges of the credit union, and of any member, accountholder, officer, or director of such credit union with respect to the credit union and the assets of the credit union; and title to the books,

---

[6] FCUA is codified beginning at 12 U.S.C. § 1751. The administrative claim procedure at issue here was added to the FCUA as part of the Financial Institutions Reform, Recovery and Enforcement Act of 1989 ("FIRREA"), Pub. L. No. 101-73, 103 Stat. 183. *Sicherman v. NCUA Bd.*, 535 B.R. 196, 200 (Bankr. N.D. Ohio 2015). Case law refers to both statutes almost interchangeably. This Court will do the same.

records, and assets of any previous conservator or other legal custodian of such credit union." § 1787(b)(2)(A). On or about December 13, 2012, GIC was declared insolvent under this statute and the NCUA Board took over as the Liquidating Agent. (Pryor Aff. [Doc. No. 23-1] ¶ 4.)[7]

In order to wind up the estate of a closed credit union, the Liquidating Agent has authority, under an extensive statutory and regulatory scheme, to determine claims of creditors of the credit union. To that end, under § 1787(b)(3)(B), the Liquidating Agent must publish a notice for three consecutive months "to the credit union's creditors to present their claims, together with proof, to the liquidating agent by a date specified in the notice which shall be not less than 90 days after the publication of such notice[.]" Here, notice was published four times in the Cleveland *Plain Dealer* instructing GIC creditors to present their claims by March 25, 2013 (the "Claims Waiver Date"). (*Id.* ¶ 5.)

The relevant statutes do not define "creditor" or "claim," but courts have applied the bankruptcy code's definitions. *See Alkasabi v. Washington Mut. Bank, F.A.*, 31 F. Supp. 3d 101, 108 n.7 (D.D.C. 2014) (citing *Nat'l Union Fire Ins. Co. v. City Sav., F.S.B.*, 28 F.3d 376, 386-87 (3d Cir. 1994) (further citations omitted)); *see also Elmco Props., Inc. v. Second Nat'l Fed. Sav. Ass'n*, 94 F.3d 914, 919 (4th Cir. 1996); *Office & Prof. Empl. Int'l Union, Local 2 v. FDIC*, 962 F.2d 63, 68 (D.C. Cir. 1992). "Claim" is defined by 11 U.S.C. § 101(5) as "right to payment, whether or not such right is reduced to judgment," or "right to an equitable remedy for breach of performance if such breach gives rise to a right to payment, whether or not such right to an equitable remedy is reduced to judgment[.]" "Creditor" is defined by 11 U.S.C. § 101(10)(A) as

---

[7] In ruling on a motion to dismiss under Fed. R. Civ. P. 12, a court "may consider the [c]omplaint and any exhibits attached thereto, public records, items appearing in the record of the case and exhibits attached to defendant's motion to dismiss so long as they are referred to in the [c]omplaint and are central to the claims contained therein." *Bassett v. Nat'l Coll. Ath. Ass'n*, 528 F.3d 426, 430 (6th Cir. 2008) (citing *Amini v. Oberlin Coll.*, 259 F.3d 493, 502 (6th Cir. 2001).)

"entity that has a claim against the debtor that arose at the time of or before the order for relief concerning the debtor[.]"

In this case, there is no dispute that C&P received notice of the Claims Waiver Date and that, on February 28, 2013, it presented one claim for an unpaid invoice for services rendered. (Pryor Aff. ¶ 6.) The Liquidating Agent never made a determination with respect to this claim within the requisite 180 days under § 1787(b)(5)(A)(i), and C&P never filed either an administrative appeal or a lawsuit within the requisite 60 days under § 1787(b)(6)(A). (*Id.* ¶¶ 7-8.) Therefore, under § 1787(b)(6)(B), the claim is deemed disallowed and the disallowance is final. *In re Lewis*, 398 F.3d 735, 740 (6th Cir. 2005) (applying 12 U.S.C. § 1821(d)(6)(B), the corresponding section of FIRREA). As a result, that claim is not at issue here. But, as discussed *infra,* plaintiff seeks to use the notice that C&P received with respect to filing claims, which led it to file the claim for the unpaid invoice, as a basis to argue notice and failure to exhaust administrative remedies as a bar to some of defendants' affirmative defenses as to plaintiff's claims in this case.

The statute further provides that "no court shall have jurisdiction over – (i) any claim or action for payment from, or any action seeking a determination of rights with respect to, the assets of any credit union for which the Board has been appointed liquidating agent, including assets which the Board may acquire from itself as such liquidating agent; or (ii) any claim relating to any act or omission of such credit union or the Board as liquidating agent." § 1787(b)(13)(D).

Plaintiff argues that this Court has no subject matter jurisdiction over the counterclaims raised by C&P because they were not first presented as administrative claims. C&P counters that "the limitation on judicial intervention is not absolute[,] [and] [n]ot all claims are subject to the

5

exhaustion requirement of FIRREA." (Opp'n MTD at 342,[8] quoting *Sharpe v. FDIC*, 126 F.3d 1147, 1156 (9th Cir. 1997), and further citing cases.) C&P argues that its claims did not arise until after the Claims Waiver Date expired, and, in fact, "it was only after [plaintiff] filed the Complaint that Defendants were, and continue to be, damaged as a result of various breaches of contract [by GIC] . . . that are appropriately asserted against [plaintiff] under the FCUA." (Opp'n MTD at 339.) But, in reply, plaintiff points out that the counterclaims are not based on any action by the Liquidating Agent, and the claims accrued, if at all, prior to GIC's liquidation. (Reply MTD at 373.) Plaintiff asserts, therefore, that all of the counterclaims are outside the scope of permissible judicial review.

Having considered the arguments and case law presented by both sides, the Court concludes that plaintiff has the better view on this issue.

In *NCUA Bd. v. LorMet Comm. Fed. Credit Union*, No. 1:10CV1964, 2010 WL 4806794 (N.D. Ohio Nov. 18, 2010), another branch of this court considered whether defendant was barred under the statutory and regulatory framework of the FCUA from pursuing arbitration. There, defendant LorMet had previously entered into an agreement with a certain credit union that gave LorMet a 90% ownership interest in a portfolio of loans originated by the credit union, in addition to the rights to service the loans. The agreement provided that, should the credit union become insolvent, defendant would automatically succeed to all rights, titles, status and responsibilities of the credit union with respect to the holding and servicing of the loans. The agreement also included a binding arbitration clause. After the credit union was declared insolvent and placed into liquidation, with the NCUA Board as the liquidating agent, the Board initially showed a

---

[8] All page number references are to the page identification number generated by the Court's electronic docketing system.

6

willingness to allow defendant to take possession of the loans and take over the servicing. Later, after the Board refused to turn over the loans, defendant filed a claim for arbitration with the American Arbitration Association ("AAA"). The Board filed a complaint in district court seeking to permanently enjoin the arbitration on the theory that defendant was required to pursue administrative remedies under the FCUA and could not invoke the arbitration clause of its agreement with the defunct credit union. In determining that defendant was barred from pursuing arbitration, the court remarked:

> As an initial matter, the Court finds that the administrative scheme enacted by Congress is far-reaching. This is evidenced by the breadth of the limitation on judicial review. Contrary to defendant's contention, the FCUA's claims process cannot be limited to claims seeking money damages because the judicial review provision is not so limited. Rather, the provision expressly provides that judicial review is precluded not only for claims involving money damages, but also with respect to "any action seeking a determination of rights with respect to [ ] the assets." Thus, provided the "claim" involves a determination of the rights with respect to assets of the credit union, the claim must first be pursued administratively.

*Id.* at * 5 (footnote omitted). The court determined that defendant was "seeking a determination of the right to service the loans which are an asset of [the insolvent credit union,] [which would] involve[] an analysis of a 'determination of rights' with respect to the loan portfolio." *Id.*

*LorMet*, though not directly on point with this case, provides guidance. As in *LorMet*, defendants' counterclaims are an attempt to hold the Liquidating Agent liable for GIC's alleged breach of the engagement letters, that is, for a breach of contract. The facts in the instant case suggest even more strongly that C&P was required to submit an administrative claim. Here, C&P's claims arose from alleged behavior of GIC itself *prior to* liquidation, whereas in *LorMet* the alleged breach occurred *after* the credit union was declared insolvent and resulted from decisions of the liquidating agent. Even so, the court in *LorMet* required that the administrative process be

7

followed, and it enjoined the arbitration. Here, if C&P felt that GIC had breached the parties' engagement agreements prior to the liquidation, it should have attempted to pursue the administrative claims process, of which it had notice. The broad definition of "creditor" and "claim" that is borrowed from the bankruptcy code for purposes of the FCUA does not require that the breach had been adjudicated and reduced to judgment so that an actual claim for dollars could be made. That C&P may not have discovered prior to the liquidation that GIC's employee was engaging in fraudulent behavior does not alter the analysis.

Other courts within this circuit, interpreting the corresponding statute relating to failed banks, have applied the administrative claims procedure in the same strict fashion with respect to counterclaims. In *Beck Bus. Ctr. Inc. v. Michigan Heritage Bank*, No. 10-CV-10914, 2010 WL 3258376 (E.D. Mich. Aug. 17, 2010), the court held that "exhaustion of FIRREA's administrative remedies is a jurisdictional prerequisite to suit in district court and failure to file an administrative claim within the period provided by § 1821(d)(6) results in [a claimant] having no further rights or remedies with respect to such claims[s] . . . ." *Id.* at *4 (internal quotation marks omitted; alterations in original) (quoting *Village of Oakwood v. State Bank & Trust Co.*, 539 F.3d 373, 385 (6th Cir. 2008) (further citation omitted)).[9]

---

[9] In *Beck Business*, plaintiff maintained three savings accounts with Michigan Heritage Bank. In April 2009, the bank was placed into receivership under the FDIC, which immediately sent notice to all of the bank's creditors informing them of the need to file any claims by July 28, 2009. In June 2009, officers of the plaintiff discovered several unauthorized withdrawals from plaintiff's bank accounts that had occurred on several occasions in April. They began communications with the bank to try to recoup these losses. In mid-June 2009, the bank's branch manager confessed and was convicted on charges relating to the unauthorized withdrawals. Then, in August 2009, plaintiff discovered more unauthorized withdrawals that had occurred in July 2009. Plaintiff's counsel (who was deceased by the time the case was considered by the court) filed an administrative claim for recovery of all the withdrawals, but it was filed two months too late, in September 2009, and was disallowed by the FDIC. Plaintiff filed suit. On the FDIC's motion, the court stayed all proceedings to allow plaintiff an opportunity to again pursue the claims administratively. The court concluded that under the particular facts of the case, equitable principles required a stay, rather than a dismissal. Although no party in the instant case has sought a stay, C&P argues that it should be permitted to pursue its counterclaims, without exhaustion, because it was unaware that it would suffer damages as a result of the discovery of Memmer's fraud until this lawsuit was filed wherein the NCUA Board is attempting to hold C&P liable for breach of duties. (*See* Opp'n M-Strike at 341.) But this is different from *Beck Business*, and, as pointed out *supra*, C&P's

8

Accordingly, because C&P admittedly did not administratively pursue the claims expressed in its counterclaims, claims that "seek[ ] a determination of rights with respect to, the assets of any credit union for which the Board has been appointed liquidating agent[,]" § 1787(b)(13)(D), those claims have been waived and this Court may not adjudicate them. Therefore, plaintiff's motion to dismiss the counterclaims (Doc. No. 23) is granted.

## B.    Plaintiff's Motion to Strike Affirmative Defenses (Doc. No. 15)

In this motion, plaintiff moves to strike nineteen of defendants' affirmative defenses. Plaintiff argues, with respect to various groupings of the defenses, that: (1) several defenses (a) are unsupported by facts sufficient to provide fair notice, or (b) contradict federal law, or (c) are generally improper; (2) other defenses relate to the non-party NCUA in its capacity as regulator of GIC; (3) still other defenses relate to post-liquidation discretionary conduct of the Liquidating Agent that is excepted under the Federal Tort Claims Act ("FTCA"); (4) some defenses improperly attempt to impute the conduct of others (*i.e.*, GIC) to plaintiff; and (5) several of the defenses are the equivalent of "claims" that should have been raised and exhausted administratively.

Fed. R. Civ. P. 12(f) provides, in relevant part: "The court may strike from a pleading an insufficient defense or any redundant, immaterial, impertinent, or scandalous matter." As the language makes clear, the decision to strike is discretionary. But "the action of striking a pleading should be sparingly used by the courts. . . . It is a drastic remedy to be resorted to . . . only when the pleading to be stricken has no possible relation to the controversy." *Brown & Williamson Tobacco Corp. v. United States*, 201 F.2d 819, 822 (6th Cir. 1953) (internal citations omitted)

---

counterclaims are more like affirmative defenses. It seems as if C&P might never have raised the claims contained in the counterclaims if the NCUA Board were not now asserting claims against C&P for millions of dollars for breach of its own duties. In other words, unlike in *Beck*, C&P is not attempting to recover for any actual loss it discovered too late to file a claim; rather, it is attempting to fend off the NCUA Board's breach of duty claim against C&P by placing any blame elsewhere.

(finding that district court erred in striking affirmative defenses because it had not been shown that they had no relation to the controversy) (*cited by NCUA Bd. v. Novak*, No. 1:15CV1606, 2016 WL 1110249, at *1 (N.D. Ohio March 22, 2016)).

"In a motion to strike, the burden of proof is upon the movant." *Novak*, 2016 WL 1110249, at *2 (citations omitted). "The burden has been described as 'formidable.'" *Id.* (citation omitted). As explained in *Novak*:

> The Sixth Circuit has ruled that: "An affirmative defense may be pleaded in general terms and will be held to be sufficient … as long as it gives plaintiff fair notice of the nature of the defense." *Chiancone v. City of Akron*, No. 5:11CV337, 2011 WL 4436587, at *2 (N.D. Ohio Sept. 23, 2011) (quoting *Lawrence v. Chabot*, No. 05-1082, 2006 WL 1342316, at *12 (6th Cir. May 16, 2006) (citation omitted)). However, a defense is insufficient if, as a matter of law, the defense cannot succeed under any circumstances. *Chiancone*, 2011 WL 4436587, at *2 (citing *Brown & Williamson*, 201 F.2d at 822); *Resolution Trust Corp. v. Tri-State Realty Investors of K.C., Inc.*, 838 F. Supp. 1448, 1450 (D. Kan. 1993).

*Id.*

In their opposition brief, defendants argue generally that striking affirmative defenses at this juncture would be premature, particularly given the unsettled case law in this area, the somewhat unique facts of this case, and its current procedural posture. They do not specifically address most of plaintiff's arguments on their merits, although they do particularly oppose both plaintiff's assertion that the heightened pleading standards of *Twombly* and *Iqbal*[10] should apply to affirmative defenses, and plaintiff's further assertion that some affirmative defenses are to be viewed as "claims" that must be administratively exhausted under the relevant statutes.

The Court agrees with defendants' general assertion that it is premature to strike affirmative defenses, notwithstanding the fact that the Court itself questions some of the full laundry list of

---

[10] *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 127 S. Ct. 1955, 167 L. Ed. 2d 929 (2007); *Ashcroft v. Iqbal*, 556 U.S. 662, 129 S. Ct. 1937, 173 L. Ed. 2d 868 (2009).

10

defenses (including, but not limited to, lack of standing, lack of jurisdiction, laches, collateral estoppel, res judicata, and the "catch-all" reservation of rights). But given the unique facts of this case and the unsettled law in this area, coupled with the admonition of the Sixth Circuit regarding striking pleadings, the Court declines to exercise its discretion at this time and will revisit the issue in due course.

That said, for reference going forward in the case, the Court finds incorrect and unsupported by case law plaintiff's argument that the *Twombly/Iqbal* standards apply to the pleading of affirmative defenses. As recently as January 2016, the Sixth Circuit has declined to address "the precise issue of whether the *Twombly/Iqbal* heightened pleading standard applies to affirmative defenses." *Depositors Ins. Co. v. Estate of Ryan*, 637 F. App'x 864, 869 (6th Cir. 2016). This Court itself has previously held that "'[a]n affirmative defense may be pleaded in general terms and will be held to be sufficient … as long as it gives plaintiff fair notice of the nature of the defense.'" *Chiancone v. City of Akron*, No. 5:11CV337, 2011 WL 4436587, at * 2 (N.D. Ohio Sept. 23, 2011) (quoting *Lawrence v. Chabot*, 182 F. App'x 442, 456 (6th Cir. 2006)); *see also Jam Tire, Inc. v. Harbin*, No. 3:14-cv-00489, 2014 WL 4388286, at *2-3 (N.D. Ohio Sept. 5, 2014) (rejecting a heightened pleading standard for affirmative defenses, and noting a "majority trend" that "cut[s] against the proposition").

In addition, on the issue of whether affirmative defenses should be treated as "claims" that require administrative exhaustion, courts differ. (*See* Opp'n M-Strike at 196-98, citing case law from the Third, Eighth, Ninth, Tenth and Eleventh Circuits.)

In reliance on *RTC v. Midwest Fed. Sav. Bank of Minot*, 36 F.3d 785. 792 (9th Cir. 1993), defendants argue that this Court has subject matter jurisdiction over its affirmative defenses because, prior to being sued by plaintiff, it was not a creditor and had no independent basis for

filing a claim. Plaintiff, in reply, asserts that it "does not disagree with the reasoning of *Bank of Minot*[.]" (Reply M-Strike at 244.) In plaintiff's view, defendants were "clearly creditors," as evidenced by the fact that C&P submitted an administrative claim for an unpaid invoice. (*Id.*) But the Ninth Circuit specifically rejected the argument that affirmative defenses should be treated like "claims" within the meaning of the relevant statute, concluding that such treatment "would lead to the 'patently absurd consequence' of requiring presentment and proof to the [Liquidating Agent] of all potential affirmative defenses that might be asserted in response to unknown and unasserted claims or actions by the [Liquidating Agent]." *Bank of Minot*, 36 F.3d at 793 (adopting the reasoning in *RTC v. Conner*, 817 F. Supp. 98, 101-02 (W.D. Okla. 1993) (holding that § 1821(d)(13)(D) [the counterpart of § 1787(b)(13)(D)] does not divest the court of subject matter jurisdiction over affirmative defenses)).

This Court is initially inclined to adopt the view that administrative exhaustion is not always required for affirmative defenses or appropriate in this case with respect to at least some of the affirmative defenses. Accordingly, the Court denies plaintiff's motion to strike. (Doc. No. 15).

That said, defendants have a duty to assert defenses that have a basis in law and fact. As suggested previously, the Court finds the applicability of some of the asserted affirmative defenses dubious, at best. Now that fact discovery is on the eve of closing, the Court instructs the defendants, within the next 14 days, to undertake a good faith reexamination of their affirmative defenses—some of which are not affirmative defenses at all and should not have been asserted (*see e.g.,* the "catch-all" reservation of rights)—and voluntarily withdraw those that are not viable before the Court and the parties expend any more valuable resources in addressing this issue.

## III. CONCLUSION

For the reasons set forth herein, plaintiff's motion to dismiss the counterclaims (Doc. No. 23) is granted and plaintiff's motion to strike certain affirmative defenses (Doc. No. 15) is denied.

**IT IS SO ORDERED**.

Dated: March 30, 2017

                                        **HONORABLE SARA LIOI**
                                        **UNITED STATES DISTRICT JUDGE**