UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | |
|---|---|
| NATIONAL CREDIT UNION ADMINISTRATION BOARD, acting in its capacity as Liquidating Agent for G.I.C. Federal Credit Union,<br><br>PLAINTIFF,<br><br>vs.<br><br>CIUNI & PANICHI, INC. CERTIFIED PUBLIC ACCOUNTANTS, et al.,<br><br>DEFENDANTS/THIRD-PARTY PLAINTIFFS,<br><br>vs.<br><br>WILLIAM J. MEMMER, et al.,<br><br>THIRD-PARTY DEFENDANTS. | CASE NO. 5:16-cv-455<br><br>JUDGE SARA LIOI<br><br>**MEMORANDUM OPINION AND ORDER** |

Before the Court are the following motions to dismiss the third-party complaint filed by Ciuni & Panichi, Inc. ("C&P"), Lynn A. Basconi, Robert J. Smolko, and Charles M. Ciuni (collectively, the "Ciuni defendants"):

1. Renewed Motion of Plaintiff National Credit Union Administration Board ("the NCUA Board" or "plaintiff"), as Liquidating Agent for G.I.C. Federal Credit Union (Doc. No. 214; Doc. No. 232 (Reply));

2. Motion to Dismiss or, In the Alternative, for Judgment on the Pleadings of Third-Party Defendant Mary Carek (Doc. No. 215; Doc. No. 233 (Reply));

3. Motion to Dismiss of Third-Party Defendants Michelle Daughtery, Jutta Corrigan, Barbara Rice, Kathleen Call, and James Jamsa (Doc. No. 216; Doc. No. 229 (Reply));

4. Motion to Dismiss of Third-Party Defendants Gerald Paugh and James Ramagli (Doc. No. 217; Doc. No. 234 (Reply));

5. Motion to Dismiss of Third-Party Defendant Greg Tench (Doc. No. 218, joining Doc. No. 216).

The Ciuni Defendants filed an omnibus opposition to all of these motions (Doc. No. 220 ["Opp'n"]) and most movants filed a reply, as indicated in the listing of motions above.

For the reasons and to the extent set forth herein, the motions to dismiss the third-party complaint are all granted.

## I. BACKGROUND

On February 26, 2016, acting in its capacity as Liquidating Agent for G.I.C. Federal Credit Union ("GIC"), the NCUA Board filed a complaint against the Ciuni defendants, seeking to recover damages relating to a massive, multi-year fraud committed by William Memmer ("Memmer")[1], a long-time officer and employee of GIC. Memmer overstated GIC's assets by over $9 million, resulting in a loss to the National Credit Union Share Insurance Fund of more than $8 million. The NCUA Board seeks to hold the Ciuni defendants responsible because they were GIC's outside independent auditors and, in that capacity, failed to discover the nonexistence of millions of dollars in GIC assets reported on published financial statements for the years 2006, 2007, and 2008. The NCUA Board alleges that, but for the Ciuni defendants' misfeasance, Memmer's fraud would have been discovered years earlier and the loss to GIC would have been either avoided or significantly reduced.

The Ciuni defendants filed a counterclaim, as amended, seeking a declaratory judgment "as to the rights of C&P and the responsibilities of [GIC], its employees, officers, committees, directors, and members under [ ] letters of engagement [between C&P and GIC]." (Doc. No. 10,

---

[1] Memmer is also a third-party defendant. Although he has never appeared at any point in this case, no default has been sought.

Counterclaim ¶ 12.) The counterclaim also sought to hold the NCUA Board liable for GIC's breach of contract. On the NCUA Board's motion, by order dated March 30, 2017, this Court dismissed the counterclaims, determining that there was no subject matter jurisdiction because the counterclaims had not been first presented as administrative claims under the relevant statute. (*See* Doc. No. 109.)

The Ciuni defendants also filed the third-party complaint that is now the subject of motions to dismiss.

## II. DISCUSSION

All the movants[2] raise essentially identical arguments. Therefore, to the extent necessary, the Court will address these issues, not the individual motions.

**A.     Counts III through VII** [3]

The Ciuni defendants are claiming that the third-party defendants "recklessly and intentionally induced C&P to enter into the engagement [with GIC] knowing C&P would rely upon the representations and omissions of the Third-Party Defendants." (Doc. No. 11, Third-Party Complaint ["TP. Compl."] ¶ 12.) The implication is that, had the third-party defendants not wrongfully induced C&P to enter into a contract with GIC, the Ciuni defendants would never have been in the predicament of having been sued by the NCUA Board. Therefore, if the Ciuni

---

[2] Each of the third-party defendants that has appeared moved for dismissal. In addition, the NCUA Board has moved to dismiss the third-party complaint. The NCUA Board is not a party to the third-party complaint, but under Fed. R. Civ. P. 14(a)(4) "any party" may to move to strike a third-party complaint, and the NCUA Board's motion could be construed as a motion to strike. Because the Court's disposition of the third-party complaint does not depend upon the NCUA Board's motion, the Court need not address its standing, which has been challenged by the Ciuni defendants.

[3] The Third-Party Complaint asserts Count VIII (Fraud) and Count IX (Civil Conspiracy) only against third-party defendants Memmer and Grubb, neither of whom have appeared. No default judgment has been sought. The Court has issued a separate order for the third-party plaintiffs to show cause why these claims should not be dismissed.

defendants are found liable to the NCUA Board on its complaint, the Ciuni defendants are looking to hold someone else responsible.

Although the third-party complaint sets forth several separate contract and tort counts,[4] these counts are indistinguishable from the claims for indemnification[5] and contribution[6] in counts I and II. Further, that Counts III through VII are not stand-alone claims is made clear by paragraph 36, which alleges that "[s]hould C&P be found liable to [the NCUA Board], C&P is entitled to recover from Third-Party Defendants by way of contribution, indemnity, subrogation, contract, tort, equity and/or otherwise." (*Id.* ¶ 36.)[7]

"As a general rule, . . . directors and officers of a corporation cannot be held personally liable for the corporation's acts . . ., unless unusual circumstances justify disregarding the corporate entity." *Olympic Forest Prods., Ltd. v. Cooper*, 148 F. App'x 260, 263 (6th Cir. 2005). Under Ohio law, "[t]he corporate form may be disregarded and individual [directors or officers] held liable for

---

[4] There is little doubt that the Ciuni defendants would be unable to prove a breach of contract (or quasi-contract) by any of the third-party defendants because the only contracts were between C&P and GIC. Further, it is highly unlikely that the Ciuni defendants could prove any tort claim, because they have not alleged any independent duty owed to them by the third-party defendants. There is also a question in the Court's mind as to whether any or all of these separately-alleged claims might be time-barred since, at the very least, the facts underlying each claim occurred prior to GIC's liquidation on December 13, 2012. The Ciuni defendants are quite clearly attempting to "cover all the bases" by alleging various counts in a third-party complaint whose only real purpose is the pursuit of indemnification and/or contribution should the Ciuni defendants be found liable to the NCUA Board.

[5] The rule of indemnity provides that "'where a person is chargeable with another's wrongful act and pays damages to the injured party as a result thereof, he has a right of indemnity from the person committing the wrongful act, the party paying the damages being only secondarily liable; whereas, the person committing the wrongful act is primarily liable.'" *Satterfield v. St. Elizabeth Health Ctr.*, 824 N.E.2d 1047, 1050 (Ohio Ct. App. 2005) (quoting *Travelers Indem. Co. v. Trowbridge*, 321 N.E. 2d 787, 789 (Ohio 1975)).

[6] At common law, contribution was the right of one who has discharged a common liability to recover from another the portion that the other should have paid; but contribution was not allowed between concurrent or joint tortfeasors. Ohio enacted Ohio Rev. Code §§ 2307.31 and 2307.32 to alleviate this inequity. The statutes permit a defendant who is found jointly and severally liable for the plaintiff's injuries to recover from the other tortfeasor(s) a portion of monies paid to the plaintiff. *Fidelholtz v. Peller*, 690 N.E.2d 502, 506 (Ohio 1998).

[7] The NCUA Board asserts in its motion that this allegation, at best, implies that "only C&P, and not the remaining Ciuni Defendants, would be damaged and entitled to recover." (Doc. No. 214 at 6800.) But this ignores the fact that the third-party complaint has identified the Ciuni defendants collectively as "C&P." (TP Compl. ¶ 1.)

wrongs committed by the corporation when (1) control over the corporation by those to be held liable was so complete that the corporation has no separate mind, will, or existence of its own, (2) control over the corporation by those to be held liable was exercised in such a manner as to commit fraud or an illegal act against the person seeking to disregard the corporate entity, and (3) injury or unjust loss resulted to the plaintiff from such control and wrong." *Belvedere Condo. Unit Owners' Ass'n v. R.E. Roark Cos., Inc.*, 617 N.E.2d 1075 (Ohio 1993), syllabus ¶ 3.

The Ciuni defendants have alleged no facts that would support piercing the corporate veil.[8] Therefore, the Ciuni defendants have failed to state any claim for relief against the third-party defendants individually and the third-party claims are, in reality, claims against GIC, on whose behalf the third-party defendants acted. Any such claims are barred on at least two theories.

1. *Exhaustion Under § 1787(b)(13)(D)*

Federal law expressly eliminates the jurisdiction of any court to consider "any claim relating to any act or omission" of a credit union being liquidated by the NCUA Board. 12 U.S.C. § 1787(b)(13)(D)(ii). To the extent the third-party claims are actually claims against GIC, they have been waived because there is nothing in the third-party complaint to suggest that the Ciuni defendants properly brought them as administrative claims.[9]

Therefore, to the extent the third-party claims could be construed as brought against GIC or the NCUA Board, they are barred due to failure to exhaust administrative remedies, a failure that now renders any such claims waived.

---

[8] "Piercing the corporate veil" is "[t]he judicial act of imposing personal liability on otherwise immune corporate officers, directors, or shareholders for the corporation's wrongful acts." Black's Law Dictionary (10th ed. 2014).

[9] In fact, the record affirmatively shows that C&P made only one claim for an unpaid invoice as part of the administrative claims process following the liquidation of GIC. (*See* Doc. No. 109 at 1256.)

2. *Standing Under 12 U.S.C. § 1787(b)(2)*

To the extent the Ciuni defendants are attempting to seek relief from the individual third-party defendants for any alleged breach of contract, promissory estoppel, tortious interference with contract, negligence, and gross negligence, they also lack standing.

The movants correctly argue that, once a federally-insured credit union is liquidated and put under the control of the liquidating agent, only that agent has standing to pursue claims against former officers and directors for alleged breaches of their duties. Under 12 U.S.C. § 1787(b)(2), the liquidating agent succeeds to "all rights, titles, powers, and privileges of the credit union, and of any member, accountholder, officer, or director of such credit union with respect to the credit union and the assets of the credit union."

Thus, to the extent the third-party claims could be construed as claims against GIC, acting through its officers and directors, the Ciuni defendants lack standing to pursue such claims.

Accordingly, Counts III through VII of the third-party complaint must be dismissed.

**B.      Counts I and II**

In the context of their argument on standing, the Ciuni defendants assert that they are seeking damages against the third-party defendants, not for injury to GIC, but for their own losses. (Opp'n at 6902.) They argue that "[t]o suggest that an aggrieved party has no remedy for its own loss as against [ ] malfeasors would mean that no one ever would[.]" (Opp'n at 6902.)

In its complaint, the NCUA Board is attempting to hold the Ciuni defendants liable for having allegedly breached their professional duties, resulting in significant injury and loss to the now-defunct GIC and its insurer. The Ciuni defendants claim that, if they are found liable to the NCUA Board, they are entitled in indemnification and contribution from the third-party defendants, whose alleged breaches of duty would have caused the Ciuni defendants' liability.

6

These claims are premature. Under Ohio law, "a cause of action for contribution does not accrue until the joint tortfeasor has paid more than [its] proportionate share of liability." *McPherson v. Cleveland Punch & Shear Co.*, 816 F.2d 249, 250–51 (6th Cir. 2987) (citing *Nat'l Mut. Ins. Co. v. Whitmer*, 435 N.E.2d 1121, 1123–24 (Ohio 1982)). The same is true for indemnity. *Midwest Specialties, Inc. v. Crown Indus. Prods. Co.*, 940 F. Supp. 1160, 1168 (N.D. Ohio 1996) ("Under Ohio law, a party seeking indemnity and/or contribution may recover only the amount it has paid in excess of its proportional share of the obligation. The right to indemnity and/or contribution becomes complete and enforceable only upon a payment by the claimant satisfying the whole of the obligation." (citing *Whitmer*, 435 N.E.2d at 1123–24)). Since the Ciuni defendants have not yet been found liable to the NCUA Board, the claims, if viable, have not yet accrued. Additionally, since they are state common law claims, and since they have been stayed for the better part of two years[10] and now threaten to be "the tail wagging the dog," the Court sees no harm in dismissing these two counts without prejudice. If appropriate, they can be brought in state court if and when they actually accrue.[11]

---

[10] The third-party claims were stayed at the parties' request on September 1, 2016. (*See* Minutes of Proceedings, 9/1/16.) Shortly thereafter, during a conference call on September 6, 2016, the Court advised counsel of the requirement under the Civil Justice Reform Act that this case be resolved in its entirety within three years, that is, by March 31, 2019. At that time, the Court declined to accept the parties' suggestions for more generous case management deadlines and "opted to shorten [them] . . . so as to accommodate the CJRA requirement[.]" (Minute Order, 9/6/16.) Nonetheless, the course of proceedings (in particular, the numerous discovery disputes) did little to preserve the timely deadlines set by the Court. On July 24, 2018, having been directed by the Court to do so, the magistrate judge performing pretrial supervision of discovery lifted the stay of the third-party complaint and the instant motions to dismiss followed.

[11] In so stating, the Court expresses no opinion as to the merits of either claim.

## III. CONCLUSION

For the reasons set forth herein, the motions to dismiss the third-party complaint are granted as follows: Counts III through VII of the third-party complaint are dismissed with prejudice as barred by both lack of standing and failure to exhaust administrative remedies; Counts I and II are dismissed without prejudice as not ripe.[12]

**IT IS SO ORDERED**.

Dated: January 9, 2019

**HONORABLE SARA LIOI
UNITED STATES DISTRICT JUDGE**

---

[12] To the extent any of the factual allegations underlying these counts may also form the basis of any affirmative defense(s), this dismissal alone should not be construed as a bar to pursuing such defenses.