# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF OHIO
## EASTERN DIVISION

| | | |
|---|---|---|
| NATIONAL CREDIT UNION | ) | CASE NO. 5:16-cv-455 |
| ADMINISTRATION BOARD, acting in its | ) | |
| capacity as Liquidating Agent for G.I.C. | ) | |
| Federal Credit Union, | ) | JUDGE SARA LIOI |
| | ) | |
| PLAINTIFF, | ) | **MEMORANDUM OPINION** |
| | ) | **AND ORDER** |
| vs. | ) | |
| | ) | |
| CIUNI & PANICHI, INC. CERTIFIED | ) | |
| PUBLIC ACCOUNTANTS, et al., | ) | |
| | ) | |
| DEFENDANTS. | ) | |
| | ) | |

Before the Court are the following motions for summary judgment:

1. Motion of plaintiff National Credit Union Administration Board ("the NCUA Board" or "the Board" or "plaintiff"), as Liquidating Agent for G.I.C. Federal Credit Union, for partial summary judgment as to defendants' statute of limitations defense (Doc. No. 196), with an opposition brief by all defendants (Doc. No. 226), and plaintiff's reply (Doc. No. 237);[1]

2. Motion of the NCUA Board for partial judgment on the pleadings or, in the alternative, for partial summary judgment as to defendants' affirmative defenses (Doc. No. 197), with an opposition brief by all defendants (Doc. No. 231), and plaintiff's reply (Doc. No. 238);

3. Motion of the NCUA Board for partial summary judgment concerning defendants' liability as to the 2007 Audit (Doc. No. 198), with an opposition brief by all defendants (Doc. No. 230), and plaintiff's reply (Doc. No. 236);

4. Motion of defendants Ciuni & Panichi, Inc., Lynn A. Basconi, and Charles Ciuni ("the Ciuni defendants") for partial summary judgment on any claim based upon the 2006 and 2007 audits (Doc. No. 205), with an opposition brief by plaintiff (Doc. No. 227), and a reply by the Ciuni defendants (Doc. No. 239); and,

---

[1] For ease of reference herein, all relevant documents will be referred to by the CM/ECF docket numbers, rather than the typical bluebook abbreviations.

5. Motion of defendant Robert J. Smolko ("Smolko") for summary judgment on all claims against him (Doc. No. 206), with an opposition brief by plaintiff (Doc. No. 228), and a reply by Smolko (Doc. No. 240).

For the reasons set forth herein, the NCUA Board's motion for partial summary judgment with respect to the Ciuni defendants' statute of limitations defense (Doc. No. 196) is denied and the Ciuni defendants' motion for partial summary judgment that all claims based on the 2006 and 2007 audits are time-barred (Doc. No. 205) is granted; the NCUA Board's motion for partial summary judgment on the pleadings or, in the alternative, for partial summary judgment as to defendants' affirmative defenses (Doc. No. 197) is granted in part and denied in part; the NCUA Board's motion for partial summary judgment concerning defendants' liability as the 2007 Audit (Doc. No. 198) is denied; and Smolko's motion for summary judgment (Doc. No. 206) is granted.[2]

# I. BACKGROUND

On February 26, 2016, acting in its capacity as Liquidating Agent for G.I.C. Federal Credit Union ("GIC"), the NCUA Board filed a complaint against the Ciuni defendants,[3] seeking to recover damages relating to a massive, multiyear fraud committed by William Memmer ("Memmer")[4], a long-time officer and employee of GIC who overstated GIC's assets by over $9 million resulting in a loss to the National Credit Union Share Insurance Fund ("NCUSIF") of more than $8 million. The NCUA Board seeks to hold the Ciuni defendants responsible because they were GIC's outside independent auditors and, in that capacity, failed to discover the nonexistence

---

[2] Plaintiff also filed a motion in limine to preclude from evidence the Material Loss Review Report, #OIG-13-13. (Doc. No. 235.) The motion is fully briefed, but need not be resolved at this time, since the Court found no need to rely upon the challenged report to resolve any of the dispositive motions.

[3] It is undisputed that Ciuni & Panichi, Inc. ("C&P") was the accounting firm engaged to perform audits of GIC's financials for the relevant years. Defendants Lynn A. Basconi ("Basconi"), Charles Ciuni ("Ciuni") and Smolko are accountants who were employed by C&P. Basconi was the accountant actually in charge of performing the GIC audits and Ciuni was the engagement partner who signed the audit reports. (Doc. No. 205 at 5401.) [All page number references herein are to the page identification number generated by the Court's electronic docketing system.]

[4] It is the Court's understanding that Memmer is currently incarcerated, having been prosecuted for his fraud.

of millions of dollars in GIC assets reported on published financial statements for the years 2006, 2007, and 2008.[5] The NCUA Board alleges that, but for the Ciuni defendants' misfeasance, Memmer's fraud would have been discovered years earlier and the loss to GIC would have been either avoided or significantly reduced.[6]

## II. DISCUSSION

### A. Standard of Review

When a party files a motion for summary judgment, it must be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "A party asserting that a fact cannot be or is genuinely disputed must support the assertion by: (A) citing to particular parts of materials in the record …; or (B) showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact." Fed. R. Civ. P. 56(c)(1).

In reviewing summary judgment motions, this Court must view the evidence in a light most favorable to the nonmoving party to determine whether a genuine issue of material fact exists.

---

[5] The complaint sets forth five counts: (1) professional negligence; (2) gross negligence; and (3), (4), (5) breach of contract for audit years 2006, 2007, and 2008. When read as a whole, the complaint clearly encompasses only the years 2006, 2007, and 2008. (*See, e.g.*, Doc. No. 1 ["Compl."] ¶¶ 57, 78-80, 85-87.) Notably, although alleging that "[d]efendants also failed to complete any audit subsequent to 2008, despite being engaged to do so[,]" (Compl. ¶ 88), there is no breach of contract claim for those subsequent years. Although, herein, the Court will find that the contract claims are subsumed into the negligence claims (and, therefore, governed by a four-year statute of limitations), had breach of contract claims been alleged for 2009 and following, those might have stood alone with a six-year statute of limitations. At this juncture, despite passing references in some of plaintiff's briefing to years after 2008, none of those years are at issue in this case.

[6] The Ciuni defendants filed a counterclaim, as amended, which sought to hold the NCUA Board liable for GIC's breach of contract. On the NCUA Board's motion, by order dated March 30, 2017, this Court dismissed the counterclaims, determining that there was no subject matter jurisdiction because the counterclaims had not been first presented as administrative claims under the relevant statute. (*See* Doc. No. 109.) The Ciuni defendants also filed a third-party complaint attempting to accomplish the same purpose as the counterclaim. The third-party complaint was dismissed as to all but two third-party defendants by separate order. (*See* Doc. No. 247.)

*Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157, 90 S. Ct. 1598, 26 L. Ed. 2d 142 (1970); *White v. Turfway Park Racing Ass'n, Inc.*, 909 F.2d 941, 943-44 (6th Cir. 1990), *impliedly overruled on other grounds by Salve Regina Coll. v. Russell*, 499 U.S. 225, 111 S. Ct. 1217, 113 L. Ed. 2d 190 (1991). A fact is "material" only if its resolution will affect the outcome of the lawsuit. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S. Ct. 2505, 91 L. Ed. 2d 202 (1986). Determination of whether a factual issue is "genuine" requires consideration of the applicable evidentiary standards. Thus, in most civil cases the Court must decide "whether reasonable jurors could find by a preponderance of the evidence that the [nonmoving party] is entitled to a verdict[.]" *Id.* at 252.

"Once the moving party has presented evidence sufficient to support a motion for summary judgment, the nonmoving party is not entitled to trial merely on the basis of allegations; significant probative evidence must be presented to support the complaint." *Goins v. Clorox Co.*, 926 F.2d 559, 561 (6th Cir. 1991). The party opposing the motion for summary judgment may not rely solely on the pleadings but must present evidence supporting the claims asserted by the party. *Banks v. Wolfe Cty. Bd. of Educ.*, 330 F.3d 888, 892 (6th Cir. 2003); *see Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S. Ct. 2548, 91 L. Ed. 2d 265 (1986) (finding that summary judgment is appropriate whenever the nonmoving party fails to make a showing sufficient to establish the existence of an element essential to that party's case and on which that party will bear the burden of proof at trial). Moreover, conclusory allegations, speculation, and unsubstantiated assertions are not evidence, and are not sufficient to defeat a well-supported motion for summary judgment. *See Lujan v. Nat'l Wildlife Fed'n*, 497 U.S. 871, 888, 110 S. Ct. 3177, 111 L. Ed. 2d 695 (1990). In other words, to defeat summary judgment, the party opposing the motion must present affirmative evidence to support his or her position; a mere "scintilla of evidence" is insufficient. *Bell v. Ohio State Univ.*,

4

351 F.3d 240, 247 (6th Cir. 2003). Rule 56 further provides that "[t]he court need consider only" the materials cited in the parties' briefs. Fed. R. Civ. P. 56(c)(3); s*ee also Street v. J.C. Bradford & Co*., 886 F.2d 1472, 1479-80 (6th Cir. 1989) ("The trial court no longer has the duty to search the entire record to establish that it is bereft of a genuine issue of material fact." (citing *Frito-Lay, Inc. v. Willoughby*, 863 F.2d 1029, 1034 (D.C. Cir. 1988))).

Under this standard, the mere existence of some factual dispute will not frustrate an otherwise proper summary judgment motion. *Dunigan v. Noble*, 390 F.3d 486, 491 (6th Cir. 2004) (quotation marks omitted) (citing *Anderson*, 477 U.S. at 247-48). "Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment. Factual disputes that are irrelevant or unnecessary will not be counted." *Anderson*, 477 U.S. at 248.

## B.    Analysis[7]

### 1.    Doc. Nos. 196 and 205 - Statute of Limitations

In their motion for partial summary judgment, the Ciuni defendants argue that all claims based upon the 2006 and 2007 audits are time-barred, and were already time-barred at the time GIC was placed into liquidation, warranting summary judgment in their favor on those claims. (Doc. No. 205 at 5397.) They assert that these claims accrued when the audit reports were issued. They further assert that all of the claims related to these two audit years are governed by the same four-year statute of limitations because, under Ohio law, the breach of contract claims (which

---

[7] Some of the dispositive motions seek judgment with respect to various affirmative defenses. Courts "can and do resolve affirmative defenses at the summary judgment stage." *Speedeon Data, LLC v. Integrated Direct Mktg., LLC*, 718 F. App'x 333, 337 (6th Cir. 2017) (citing *Louzon v. Ford Motor Co.*, 718 F.3d 556, 561 (6th Cir. 2013) ("[T]he question whether a particular affirmative defense is sufficiently supported by testimony to go to the jury may often be resolved on a motion for summary judgment." (further citation omitted))).

ordinarily have a six-year statute of limitations) are subsumed into the professional negligence claims. (*Id.* at 5404-05 (citing cases).)

The NCUA Board takes the position in its motion that an accounting malpractice claim accrues when the negligent act is discovered. (Doc. No. 196 at 1822.) It further argues that there are several theories under Ohio law (*e.g.*, the delayed damages rule, the termination rule, the continuing tort doctrine, and general equitable tolling principles) that, under the "unique circumstances" of this case, would permit the tolling of the statute of limitations for the tort claims for audit years 2006 and 2007. (Doc. No. 196 at 1822 (citing *Antioch Co. Litig. Tr. v. Morgan (In re Antioch Co.)*, No. 3:10-CV-156, 2011 WL 3664564 (S.D. Ohio Aug. 12, 2011)).) In opposition to the Ciuni defendants' motion, the NCUA Board also argues that the breach of contract claims are not subsumed into the professional negligence claims because any such Ohio law conflicts with, and is preempted by, the Extender Statute, 12 U.S.C. § 1787(b)(14). (Doc. No. 227 at 7312-15.)

There are several issues raised by these competing summary judgment motions. The Court will address them in this order: (a) whether the breach of contract claims are subsumed into the professional negligence claims; (b) when the claims accrued; (c) whether the Extender Statute affects the date of accrual; and (d) whether there is any equitable theory upon which the statute of limitations should be tolled.

### a.    Subsumption of claims

The Ciuni defendants first argue that all the claims in the Board's complaint are governed by the four-year statute of limitations for professional negligence, that is, that the breach of contract claims are subsumed into the professional negligence claims.

In its complaint, the NCUA Board alleges, in relevant part:

13.     On December 13, 2012, the NCUA Board placed GIC into involuntary liquidation due to GIC's insolvency, and the NCUA Board appointed itself as its liquidating agent, pursuant to 12 U.S.C. § 1787(a)(1)(A). The liquidation of GIC was triggered by the discovery that William Memmer ("Memmer"), a long-time officer and employee of GIC, had committed a massive, multi-year fraud against GIC by overstating GIC's assets by over $9 million, resulting in a loss to the National Credit Union Share Insurance Fund ("NCUSIF") of more than $8 million.

14.     Despite the blatant and substantial overstatements of assets, in each of the years 2006-2008, [d]efendants published audited financial statements indicating all asset accounts were fairly and accurately represented. The reality was, as early as 2006, GIC had insufficient assets to satisfy its liabilities, and was insolvent. GIC's insolvency was not discovered until December, 2012, at which time the net loss borne by the NCUSIF had increased due to the absence of sufficient assets.

15.     At all relevant times, [d]efendants served as GIC's outside independent auditor and as such, were required, at a minimum, to perform their services in accordance with Generally Accepted Auditing Standards ("GAAS").

16.     During the entire time that Memmer was carrying out his unsophisticated, yet increasingly brazen and costly fraud against GIC, [d]efendants failed to discover that millions of dollars of GIC assets that [d]efendants reported on their published financial statements for each of the years 2006, 2007 and 2008 did not exist. As demonstrated more fully below, [d]efendants repeatedly, and erroneously, issued clean opinions stating that the asset accounts listed in GIC's financial statements were fairly and accurately stated. Overlooking colossal misstatements of assets and nonexistent internal controls, [d]efendants continued to negligently perform auditing services for GIC.

17.     The Liquidating Agent has identified numerous acts and omissions by [d]efendants in connection with C&P's audit engagements for fiscal years 2006, 2007 and 2008, each constituting professional negligence, gross negligence and breach of contract. In the absence of [d]efendants' misfeasance, Memmer's substantial misstatement of assets would have been discovered by early 2007 (when [d]efendants were required to publish the audited financial statements as of December 31, 2006), and [p]laintiff's damages would have been avoided.

* * *

## COUNT 1 - PROFESSIONAL NEGLIGENCE

89.     The Liquidating Agent hereby restates and incorporates by reference each of the allegations set forth above as if fully rewritten herein.

90.     Defendants owed GIC a duty of care, diligence and prudence in executing their professional obligations as GIC's independent auditors. Defendants owed a duty to perform their audits and professional services in accordance with applicable professional standards.

91.     Defendants breached their duties in numerous ways, including without limitation, committing the acts of negligence detailed herein. Defendants' negligent acts violated numerous governing professional standards in many significant ways, and thus they missed several opportunities to identify substantial and material misstatements of GIC's assets.

\* \* \*

94.     Had [d]efendants complied with applicable professional standards, they would have detected that Memmer substantially and materially misstated GIC's assets in 2006, 2007 and 2008, and GIC would have been deemed insolvent and immediately liquidated by the NCUA Board.

\* \* \*

## COUNT 2 - GROSS NEGLIGENCE

96.     The Liquidating Agent hereby restates and incorporates by reference each of the allegations set forth above as if fully rewritten herein.

97.     Defendants' actions in committing the acts described above demonstrated a complete absence of care, a conscious disregard and indifference to the rights of GIC and its members, and an utter disregard for prudence amounting to gross negligence and recklessness.

\* \* \*

99.     But for [d]efendants' grossly negligent and reckless acts and omissions, GIC would have been liquidated by the NCUA Board at an earlier date and would have avoided incurring additional losses that were ultimately borne by the NCUSIF.

100.     Defendants' misconduct constituted such an extreme departure from professional standards as to constitute gross negligence.

\* \* \*

(Compl. ¶¶ 13-17, 89-91, 94, 96-97, 99-100.) The complaint goes on to assert three counts characterized as breach of contract claims (one for each audit year: 2006, 2007, and 2008), all incorporating by reference each of the above-quoted allegations. Each of the three counts alleges for its respective year that "C&P and GIC executed an engagement letter[.]" (*Id.* ¶¶ 103, 109, 115.) The complaint further alleges in each of the three counts as follows:

> C&P breached various promises set forth in the [relevant year's] Contract by, among other things: (a) failing to exercise professional judgment and to sufficiently test and confirm GIC's cash and investment accounts; (b) failing to plan and perform the audit to obtain reasonable assurance about whether the financial statements are free from material misstatement; (c) failing to obtain an understanding of GIC's internal controls sufficient to plan an audit; (d) failing to ensure that financial statements were prepared in accordance with GAAP; and (e) failing to apply GAAS to audits conducted on GIC's financial statements.

(*Id.* ¶¶ 106, 112, 118.)

In *Fronczak v. Arthur Andersen, L.L.P.*, 705 N.E.2d 1283 (Ohio Ct. App. 1997), cited by the Ciuni defendants, an Ohio court of appeals noted that it was "evident from the face of the amended complaint that the factual allegations supporting [the] breach-of-contract claim are the same factual allegations supporting [the] accountant-negligence claims[.]" *Id.* at 1287.

> In such circumstances, courts have routinely held that the breach-of-contract claim is simply a restatement of the negligence claims and that the four-year statute of limitations for professional negligence found in R.C. 2305.09(D) applies rather than the six-year statute of limitations for contracts not in writing found in R.C. 2305.07.

*Id.* (citing cases).

The NCUA Board argues in opposition that the principle announced in *Fronczak* and its cited cases is inapplicable where, as here, there were written contracts. Although the Board is correct that the cases cited in *Fronczak* apparently involved only oral contracts, the reasoning underlying the subsumption of claims was not dependent upon whether the contract was written

9

or oral. Rather, it depended upon the fundamental *nature* of the claims as alleged, an analysis not altered by the way the individual claims may have been *framed* by the plaintiff. *See, e.g.*, *Cohen & Co. v. Breen*, No. 100775, 2014 WL 4460363, at *5 (Ohio Ct. App. Sept. 11, 2014) (citing cases holding that "'malpractice by any other name still constitutes malpractice,' whether predicated on contract or tort[]"); *see also Chilton-Clark v. Fishel*, No. 16AP-76, 2016 WL 5639615, at *2 (Ohio Ct. App. Sept. 30, 2016) (affirming summary judgment where the trial court found that the negligence, breach of contract, and breach of fiduciary duty claims "were essentially a single claim for 'professional malpractice'").

All the claims in the complaint are based on the Ciuni defendants' allegedly deficient auditing of GIC. Although there were written contracts, the NCUA Board points to nothing in any of the contracts that created a separate duty distinct from the Generally Accepted Accounting Principles ("GAAP") underlying the professional negligence and gross negligence claims.[8] Therefore, under Ohio law, all the claims are subsumed under the professional negligence claims.

The NCUA Board asserts that Ohio law conflicts with the Extender Statute, which "specifically recognizes a 6-year statute of limitations for contract claims[,]" and, therefore, the Ohio law is preempted. (Doc. No. 227 at 7312.) But the Extender Statute, as cited by the Board, refers to the differing length of the statute of limitations for tort and contract claims; it does not address how individual claims should be framed. Before the statutes of limitations in the Extender Statute are applied, one must first determine the precise *nature* of the claims.

---

[8] The NCUA Board makes passing reference, in a footnote, to defendants owing "a contractual duty to perform confirmations, a duty that is separate from the duties owed under GAAS and GAAP." (Doc. No. 227 at 7312, n.8.) But the Board offers no supporting citation to either the allegations of the complaint or to the actual contracts that supposedly created that duty. The Court need not search the record to find support for plaintiff's half-hearted assertion.

There is no dispute that, under Ohio law, the statute of limitations for accounting malpractice is four (4) years. (Doc. No. 196 at 1822; Doc. No. 205 at 5404.) *See Inv'rs REIT One v. Jacobs*, 546 N.E.2d 206, 210 (Ohio 1989) (citing Ohio Rev. Code § 2305.09(D)). Here, the Ciuni defendants are correct that all the claims are professional negligence claims, although some purport to be based on contract. Therefore, all the claims are governed by the same four-year statute of limitations.

### b. Accrual of claims

The Ciuni defendants argue that a claim for accounting malpractice accrues four years from the date an audit report is issued. (Doc. No. 205 at 5404.) They claim that, as recognized by the NCUA Board's expert, Harry J. Potter ("Potter"), the 2006 audit was completed and issued on March 2, 2007, and presented at the GIC annual meeting on March 4, 2007; the 2007 audit was completed and issued on February 22, 2008, and presented at the GIC annual meeting on March 2, 2008. (Doc. No. 205 at 5405-06 (citing Doc. No. 204-1 ["Potter Dep."] at 5262 (73))[9].) This lawsuit was filed on February 26, 2016–well beyond four years after the audit reports were issued and presented.

In opposition, the NCUA Board argues that use of Potter's acknowledgement of the dates of the 2006 and 2007 audits would be "improper" because "he gave [d]efendants the benefit of the doubt by employing a conservative damages methodology." (Doc. No. 227 at 7315 (citing Doc. No. 197-6 [Expert Report of Harry Potter] at 2178.))[10] Regardless of the damages methodology

---

[9] Because the deposition has four pages to every one CM/ECF page, the Court cites to both the PageID# and the actual deposition page number.

[10] In a separate section of its opposition to the Ciuni defendants' motion, the NCUA Board attacks the defendants' factual assertion that "some of the [GIC] Board members lacked the requisite education or experience to effectively serve on the Board." (Doc. No. 227 at 7317 (quoting Doc. No. 205 at 5400 (alteration in original)).) This argument has no relevance to the statute of limitations question raised by the cross-motions, and the Court need not address it.

Potter may have applied, he nonetheless explicitly accepted the March 2, 2007 and February 22, 2008 audit report dates, both during his deposition and for purposes of his damages calculation.

Finally, the NCUA Board asserts that "[d]efendants are also as confused as everyone else when it comes to determining which of the multiple reports in 2006 and 2007 were the actual final audit reports." (*Id.*) The Board then points to the alternative dates of July 19, 2007 (for the 2006 audit) and July 1, 2008 (for the 2007 audit) as possible dates of accrual. (*Id.* at 7316.) Even taking those dates as the correct ones, the claims would still be time-barred.[11]

### c. Effect of the Extender Statute, 12 U.S.C. § 1787(b)(14)

Although it is not particularly clear from either the NCUA Board's own motion or its opposition to the Ciuni defendants' motion, it appears that the Board is of the view that the Extender Statute, by itself, is capable of restarting an already-expired statute of limitations in cases where the Liquidating Agent, upon taking over a failed credit union, discovers an allegedly negligent act that, for whatever reason, had not been previously (or timely) pursued by the credit union itself. (Doc. No. 196 at 1822 & n.8.)

The Ciuni defendants properly reject this interpretation of the statute. (Doc. No. 205 at 5407.) In a case construing a virtually identical statute[12] that applies to the conservatorship of failed

---

[11] In its opposition to the Ciuni defendants' motion, the NCUA Board does not repeat the argument in its own motion that the claims accrued as of their discovery, not as of the date of the audit reports. But the Board also does not abandon that argument, which is discussed in the equitable tolling section of this opinion. In opposition to the Ciuni defendants' motion, the Board merely questions the dates advanced by defendants. But even assigning the later dates suggested by the Board, the claims are still time-barred.

[12] Notably, the Extender Statute that governs situations where the FDIC is appointed receiver or conservator of a failed federally-insured depository institution includes additional language not found in the otherwise almost identical statute applicable to failed credit unions. This additional language specifically revives "a claim arising from fraud, intentional misconduct resulting in unjust enrichment, or intentional misconduct resulting in substantial loss to the institution[,]" 12 U.S.C. § 1821(d)(14)(C), provided the claim had expired within five years of the FDIC's appointment. Courts, however, have declined extension of that very specific language to include negligence actions brought by the receiver. *See, e.g.*, *Fed. Deposit Ins. Corp. v. Coleman*, No. 1:14-cv-00310-CWD, 2015 WL 476234, at *5 (D. Idaho Feb. 5, 2015).

depository institutions, the Tenth Circuit adopted the position of the Third Circuit and held that "'[i]f the state statute of limitations has expired before the government acquires a claim, it is not revived by transfer to a federal agency.'" *Fed. Deposit Ins. Corp. v. Regier Carr & Monroe*, 996 F.2d 222, 225 (10th Cir. 1993) (quoting *Fed. Deposit Ins. Corp. v. Hinkson*, 848 F.2d 432, 434 (3d Cir. 1988)). The court further noted: "'Were this not the law, then the FDIC, FSLIC, or RTC could, by the mere act of taking conservatorship of a bank, revive claims relating to acts done during the Great Depression.'" *Id.* (quoting *Resolution Tr. Corp. v. Krantz*, 757 F. Supp. 915, 920 (N.D. Ill. 1991)); *see also Resolution Tr. Corp. v. Artley*, 28 F.3d 1099, 1101 (11th Cir. 1994) (stating that the Extender Statute generally will not "'revive stale state law claims acquired by the FDIC'" (quoting *Fed. Deposit Ins. Corp. v. Dawson*, 4 F.3d 1303, 1307 (5th Cir. 1993))).

There is no principled reason to apply a different interpretation to 12 U.S.C. § 1787(b)(14) than that applied to materially identical language in 12 U.S.C. § 1821(d)(14). *See Nat'l Credit Union Bd. v. Goldman, Sachs & Co.*, No. 13 Civ. 6721(DLC), 2014 WL 297518, at *5 (S.D.N.Y. Jan. 28, 2014) (citing *United States v. Robinson*, 702 F.3d 22, 33-34 (2d Cir. 2012) ("[W]here Congress has used materially identical language, it 'obviously' intended the same purpose[.]")). Section 1787(b)(14), just like § 1821(d)(14), does not revive claims that were already stale at the time of liquidation; it merely *extends* the time within which a liquidating agent may bring a still-viable claim that it acquires from the failed credit union.

### d.    Tolling of the Statute of Limitations

In its motion for summary judgment relating to the statute of limitations defense (Doc. No. 196), the NCUA Board argues that the four-year statute should be tolled on one or all of four equitable theories. Each will be addressed separately.

### 1) *Equitable Tolling*

The NCUA Board argues that "Ohio recognizes that the doctrine of equitable tolling may be used to avoid the inequitable use of the statute of limitations." (Doc. No. 196 at 1835 (quoting *Wuliger v. Star Bank*, No. 3:02 CV 1513, 2008 WL 2323887, at *4 (N.D. Ohio June 4, 2008).) The Board bears the burden of establishing any entitlement to equitable tolling.

"Equitable tolling is the exception rather than the rule, granted only sparingly." *Osman v. Grube, Inc.*, No. 16-CV-802, 2017 WL 2908864, at *8 (N.D. Ohio July 7, 2017) (internal quotation marks omitted). "[A] litigant is entitled to equitable tolling of a statute of limitations only if the litigant establishes two elements: '(1) that he has been pursuing his rights diligently, and (2) that some extraordinary circumstance stood in his way and prevented timely filing.'" *Menominee Indian Tribe of Wis. v. United States*, -- U.S. --, 136 S. Ct. 750, 755, 193 L. Ed. 2d 652 (2016) (quoting *Holland v. Florida*, 560 U.S. 631, 649, 130 S. Ct. 2549, 177 L. Ed. 2d 130 (2010)).

The trial court, in its discretion, may grant equitable tolling on a "case-by-case basis." *Truitt v. Cty. of Wayne*, 148 F.3d 644, 648 (6th Cir. 1998). In *Truitt*, the Sixth Circuit expressed:

> We have identified five factors to consider when determining the appropriateness of equitably tolling a statute of limitations: 1) lack of notice of the filing requirement; 2) lack of constructive knowledge of the filing requirement; 3) diligence in pursuing one's rights; 4) absence of prejudice to the defendant; and 5) the plaintiff's reasonableness is remaining ignorant of the particular legal requirement.

*Id.*

The Board claims that the instant case is "factually similar" to *Wuliger v. Star Bank*, No. 3:02 CV 1513, 2008 WL 2323887, at *4 (N.D. Ohio June 4, 2008), where the court concluded that equitable tolling was appropriate. In *Wuliger*, one James Capwill was the escrow agent for Liberte Capital Group and Alpha Capital Group. The escrowed funds of the two groups' investors were in

the control of Capwill and his wholly-owned companies, VES and CFL, which both maintained accounts at Star Bank. Capwill converted millions of dollars of the escrowed funds to his personal use. *Id.* The receiver (William Wuliger) sued Star Bank asserting various claims based on alleged acts or omissions of the bank and its employees with respect to administering the relevant accounts. For example, the receiver alleged that Star Bank and its employees intentionally or negligently allowed Capwill to use Star Bank to launder money because he was a significant customer of the bank, aided and abetted him in his conversion of investor funds, and failed to adhere to the standards of a prudent and reasonable banker. *See Wuliger*, Doc. No. 1, Complaint ¶ 16.[13] On Star Bank's motion for judgment on the pleadings, the court in *Wuliger* concluded that equitable tolling applied because "[u]ntil there was an appointment of a receiver and access to the relevant bank accounts, it cannot be said that there was notice of what cause of action existed nor was it capable of being asserted until the receiver was able to examine those records." *Id.*[14]

Aside from the fact that *Wuliger* was not an accounting malpractice case, it is factually distinguishable from the instant case. The only way that *Wuliger* would be applicable here would be if the NCUA Board were trying to sue *GIC* for some sort of misconduct (in the same manner that Wuliger sued Star Bank for its misconduct). The claims asserted now by the NCUA Board against the Ciuni defendants initially belonged to GIC, which could have timely asserted them but, for whatever reason, did not do so. The mere fact that the NCUA Board has succeeded to GIC's rights does not provide a basis for tolling the statute of limitations in a manner that would

---

[13] As *Wuliger* was decided by another branch of this court, the undersigned has direct access to the documents filed in the case through CM/ECF.

[14] The applicability of *Wuliger* is somewhat questionable for the simple reason that, as correctly noted by the Ciuni defendants, the Ohio appellate case relied upon by the court in *Wuliger* to justify use of the doctrine of equitable *tolling* was actually a case that applied the doctrine of equitable *estoppel*. *See Livingston v. Diocese of Cleveland*, 710 N.E.2d 330 (Ohio Ct. App. 1998) (cited by *Wuliger*).

essentially revive completely stale claims. Further, the Board has not shown that *GIC* had been pursuing its rights diligently, but that something outside its control stood in the way. *Menominee Indian Tribe, supra*.

There is no basis for applying equitable tolling as a general principle in this case.

### 2) *Delayed Damages Rule*

The Ohio Supreme Court "has long recognized that a '[s]tatute of limitations commences to run so soon as the injurious act complained of is perpetrated, although the actual injury is subsequent . . . .'" *LGR Realty, Inc. v. Frank & London Ins. Agency*, 98 N.E.3d 241, 245 (Ohio 2018) (alteration in original) (quoting *Kerns v. Schoonmaker*, 4 Ohio 331 (1831), syllabus). There are exceptions to this general rule, including the delayed damages rule, under which, "where the wrongful conduct complained of is not presently harmful, the cause of action does not accrue until actual damage occurs." *Velotta v. Leo Petronzio Landscaping, Inc.*, 433 N.E.2d 147, 150 (Ohio 1982).

The NCUA Board argues that, had the Ciuni defendants not acted negligently in conducting the audits, Memmer's fraudulent conduct "would have been *discovered* by early 2007" and "damages would have been *avoided*." (Compl. ¶ 17, emphases added.) In its motion, the Board argues that it "did not become aware of the [Ciuni defendants'] malpractice until after GIC was liquidated in December 2012[.]" (Doc. No. 196 at 1840.) The Board claims, therefore, that the actual damage did not occur until the time of liquidation, a scenario it characterizes as "delayed damages." It claims that it "did not sustain a legal harm until GIC was liquidated on December 13, 2012, and payouts from the NCUSIF began to be made." (*Id.*)

But the professional negligence claims brought by the NCUA Board were "inherited" from GIC and would not exist were it not for the professional relationship between GIC and the Ciuni

16

defendants, as supported by the allegations in Counts 1 and 2 of the complaint. Any negligence was committed against GIC and was merely succeeded to by the Board. The fact that GIC, for whatever reason, did not discover the allegedly negligent conduct of the Ciuni defendants does not alter or toll the statute of limitations for a claim brought by the Board. In fact, the Ohio Supreme Court has explicitly held that "[t]he discovery rule is not available to claims of professional negligence brought against accountants." *Inv'rs REIT One*, 546 N.E.2d at syllabus ¶ 2a.[15] The NCUA Board's assertion of the delayed-damages theory "cannot . . . be used to circumvent the clear holding of [*Investors*] *REIT One* by resurrecting the discovery rule in a different analytical guise." *Chateau Estate Homes, LLC v. Fifth Third Bank*, 95 N.E. 3d 693, 698-99 (Ohio Ct. App. 2017) (internal quotation marks omitted); *see also Flagstar Bank, F.S.B. v. Airline Union's Mortg. Co.*, 947 N.E.2d 672, 678 (Ohio 2011) ("In *Investors REIT One*, we explicitly rejected the application of the discovery rule for [professional negligence] causes of actions."); *Grant Thornton v. Windsor House, Inc.*, 566 N.E.2d 1220, 1222 (Ohio 1991) (rejecting the delayed-damages rule implicitly).

Moreover, the Board cannot establish that there were any delayed damages. Assuming the Ciuni defendants engaged in "wrongful conduct" by negligently conducting audits in 2006, 2007,

---

[15] The court in *Investors REIT One* noted that Ohio Rev. Code § 2305.09 "expressly includes its own limited discovery rule: 'If the action is for trespassing under ground or injury to mines, or for the wrongful taking of personal property, the causes thereof shall not accrue until the wrongdoer is discovered; nor, if it is for fraud, until the fraud is discovered.'" 546 N.E.2d at 211, quoting § 2305.09(D). The court then concluded:

> The General Assembly's failure to include general negligence claims under the discovery rule set out in R.C. 2305.09 argues strongly that it was not the legislature's intent to apply the discovery rule to such claims. The legislature's express inclusion of a discovery rule for certain torts arising under R.C. 2305.09, including fraud and conversion, implies the exclusion of other torts arising under the statute, including negligence.

*Id.* (internal citation omitted). The NCUA Board is not asserting that the Ciuni defendants committed anything other than negligence; although Memmer committed fraud, there is no allegation that the Ciuni defendants were involved in that fraud. Therefore, the discovery rule in the statute is inapplicable here.

and 2008 that permitted Memmer's fraud to go undiscovered, the "actual damage" caused by the Ciuni defendants' negligence was "presently harmful," *see Velotta*, *supra*, because it allegedly facilitated the ever-increasing deficits in GIC's finances that ultimately led to liquidation.

There is no basis for applying the delayed damages rule in this situation.

### 3) *Continuing Tort*

The NCUA Board seeks to apply the continuing tort doctrine because the Ciuni defendants' negligence "was continuous from 2006 through late 2012." (Doc. No. 196 at 1840.) The Board argues that "[t]he doctrine tolls the statute of limitations 'until the date of the last injury or when the tortious act ceased.'" (*Id*., purporting to quote *Sta-Rite Indus., LLC v. Franklin Elec. Co.*, 519 F. App'x 370, 381 (6th Cir. 2013)[16].)

Under this doctrine, "[w]here new harm occurs on a continuing basis due to continuing course of conduct, the statute of limitations begins anew each day of the harm." *Ohio Edison Co. v. Wilkes*, No. 10MA174, 2012 WL 2308127, at *9 (Ohio Ct. App. June 13, 2012). "The concept of a continuing violation, easily stated in theory, becomes more difficult to apply in a specific context." *Hayden v. Fifth Third Bank, Inc.*, No. 3:12-CV-00824-H, 2013 WL 2242760, at *5 (W.D. Ky. May 21, 2013) (applying Ohio law).

The Ciuni defendants argue that, under Ohio law, the continuing tort doctrine cannot be applied to the Board's claims. (Doc. No. 226 at 7255.) They cite *Lee Turzillo Contracting Co. v. Touche Ross & Co.*, Nos. 51075, 51114, 1986 WL 155040 (Ohio Ct. App. Oct. 9, 1986), where plaintiff "sought . . . compensatory damages for the alleged negligence of defendant-appellee

---

[16] The quoted language is actually found in *Sta-Rite Indus., LLC v. Franklin Elec. Co.*, No. 1:09CV01790, 2011 WL 4626022, at *7 (N.D. Ohio Sept. 30, 2011) (quoting *Rodrigue v. Olin Emps. Credit Union*, 406 F.3d 434, 442 (7th Cir. 2005) and applying Indiana and Seventh Circuit law).

Touche Ross [a national accounting firm] in failing to detect employee embezzlement between 1977 and early 1982." *Id.* at *1. There, the court held that "a continuous tort approach . . . must fail [because] . . . [w]hile the embezzlement herein occurred throughout the time period, defendant's alleged negligence occurred at annual intervals. The tort was readily separated by dates, and the damages identifiable by years." *Id.* at *8.

The NCUA Board challenges the applicability of *Lee Turzillo* because it "devoted one paragraph to the 'suggestion of a continuous tort approach.'" (Doc. No. 237 at 7581.) The Board claims that "[the] quoted language was casually used by the court and does not set the standard for applying the continuous tort doctrine." (*Id.*) The Board claims that the "black letter law" is found, not in an Ohio case, but in the Sixth Circuit case of *Hensley v. City of Columbus*, 557 F.3d 693, 697 (6th Cir. 2009). Finally, and inexplicably, the Board argues that, in *Lee Turzillo*, the court "found that the malpractice claim was 'regulated by statute', *i.e.*, R.C. § 2305.09, which does not apply here." (Doc. No. 237 at 7581.)

The Ciuni defendants have the correct view. *Lee Turzillo* could not have been clearer. In cases of professional negligence involving accountants, such as the instant case, Ohio Rev. Code § 2305.09(D) applies a four-year statute of limitations that accrues when the negligent conduct (each individual audit) occurs, and, given the facts of this case, it is not amenable to a continuing violation theory (or, for that matter, a discovery theory).

Notwithstanding the Board's urging that this Court apply the test for a continuous violation mentioned in *Hensley*, *supra*,[17] the Sixth Circuit has also observed (in an environmental dispute)

---

[17] In *Hensley*, property owners brought taking and due process claims against the City of Columbus after their water wells dried up due to "dewatering" activity on a city sewer project. The district court dismissed the taking claim as time-barred. Plaintiffs urged the court to apply a "continuous violation" theory, which the court noted was "rooted in general principles of common law" and "exists if: (1) the defendants engage in continuing wrongful conduct; (2) injury

that "'[c]ourts have been extremely reluctant to apply [the continuing violation] doctrine outside the context of Title VII.'" *Nat'l Parks Conservation Ass'n, v. Tenn. Valley Auth.*, 480 F.3d 410, 416 (6th Cir. 2007) (quoting *LRL Props. v. Portage Metro. Housing Auth.*, 55 F.3d 1097, 1105 n.3 (6th Cir. 1995)). Although finding no opinion that articulated a principled reason for so limiting the doctrine, the court nonetheless concluded that there was no continuing violation. In reaching that conclusion, it stated: "Courts have long distinguished continuing violations, which toll the applicable statutes of limitations, from repetitive discrete violations, which constitute independently actionable individual causes of action." *Id.* at 417.

In the instant case, the challenged audits were repetitive and discrete, not continuing. The continuing tort doctrine does not apply.

### 4) *Equitable Estoppel*

The NCUA Board argues, lastly, that equitable estoppel bars the Ciuni defendants from raising a statute of limitations defense. "Equitable estoppel requires a party prove another party made a factual representation, that is misleading, that induced actual reliance which is reasonable and in good faith; and the misrepresentation caused detriment to the relying party." *Alford v. E. Ohio Gas Co.*, No. 2013AP030014, 2014 WL 2109320, at *17 (Ohio Ct. App. May 12, 2014). "The purpose of equitable estoppel is to prevent actual or constructive fraud and to promote the ends of justice." *Ohio State Bd. of Pharmacy v. Frantz*, 555 N.E.2d 630, 633 (Ohio 1990). "[T]he party claiming the estoppel must have relied on its adversary's conduct 'in such a manner as to change his position for the worse.'" *Heckler v. Cmty. Health Servs. of Crawford Cty., Inc.*, 467 U.S. 51, 59, 104 S. Ct. 2218, 81 L. Ed. 2d 42 (1984). "In order to apply the doctrine to the statute

---

to the plaintiffs accrues continuously; and (3) had the defendants at any time ceased their wrongful conduct, further injury would have been avoided." *Hensley*, 557 F.3d at 697.

of limitations, a party must show that the misrepresentation 'was calculated to induce a plaintiff to forgo the right to sue.'" *Hoeppner v. Jess Howard Elec. Co.*, 780 N.E.2d 290, 297 (Ohio Ct. App. 2002) (quoting *Welfley v. Vrandenburg*, No. 95APE11-1409, 1996 WL 145467, at *3 (Ohio Ct. App. Mar. 29, 1996)); *see also Walburn v. Lockheed Martin Util. Servs., Inc.*, 443 F. App'x 43, 49 (6th Cir. 2011) (agreeing with the district court) ("Ohio courts have narrowed the kind of misrepresentation that must be alleged in order to invoke equitable estoppel to preclude a defendant from asserting a statute-of-limitations defense.").

As properly pointed out by the Ciuni defendants, the Board has pointed to no statements calculated to induce GIC (or the Liquidating Agent) to forgo the right to sue in a timely manner. This renders the doctrine inapplicable. (Doc. No. 226 at 7257.) In reply, the Board merely points to defendants' clean audit report confirming that the account balances were "'fairly stated at 12/31/06' and supported by a Corp. One confirmation." (Doc. No. 237 at 7582.) These may have been misrepresentations, but there is no showing that they were calculated to prevent GIC from suing for professional negligence.

The NCUA Board has not established a right to equitable estoppel.

**e.      Conclusion Regarding Doc. Nos. 196 and 205**

For the reasons set forth, the NCUA Board's motion for partial summary judgment with respect to the Ciuni defendants' statute of limitations defense (Doc. No. 196) is **denied**. The Ciuni defendants' motion for partial summary judgment that all claims based on the 2006 and 2007 audits are time-barred (Doc. No. 205) is **granted**.

## 2. Doc. No. 197 - Other Affirmative Defenses[18]

In this motion for summary judgment, the NCUA Board seeks either partial judgment on the pleadings or partial summary judgment with respect to eight of the affirmative defenses for several different reasons,[19] each of which is addressed separately below.

### a. Lack of Subject Matter Jurisdiction (Eighth [contributory/comparative negligence], Eighteenth [failure to mitigate], Nineteenth [set-off], and Twenty-Third [unclean hands] Defenses)

The NCUA Board first argues that, because these four affirmative defenses all seek a determination of rights with respect to the assets of GIC and/or relate to an act or omission of GIC or the Liquidating Agent, there is no subject matter jurisdiction since the Ciuni defendants failed to first exhaust their administrative remedies.

The Board relies upon 12 U.S.C. § 1787(b)(13)(D), which provides that no court shall have jurisdiction over:

(i)     any claim or action for payment from, or any action seeking a determination of rights with respect to, the assets of any credit union for which the Board has been appointed liquidating agent, including assets which the Board may acquire from itself as such liquidating agent; or

---

[18] The NCUA Board filed three motions for summary judgment, without prior leave and notwithstanding this Court's Initial Standing Order ("ISO") (Doc. No. 3) expressly stating that "[t]he Court typically permits only one summary judgment motion per party," and that "[a] party must seek prior leave of Court before filing any additional or supplemental motions for summary judgment[.]" (*Id.* at 42.) The Court would have been well within its discretion, in light of this infraction of the ISO by the plaintiff, to have disregarded all but the first-filed motion. However, since the ISO also states that leave may be granted to file additional motions "upon a showing of good cause[,]" (*id.*), and since it is likely that the Court would have granted leave in this case had it been sought, it will overlook the plaintiff's infraction.

That said, the ISO also states "the Court will not consider any material that is submitted [in support of a motion] by way of incorporation of previously-filed documents. (*Id.* at 40.) Despite this order, in its second motion for summary judgment, the NCUA Board purports to incorporate by reference the arguments made in earlier briefs on other motions. (Doc. No. 197 at 2034, citing Doc. No. 15 and Doc. No. 22.) The Board cites Fed. R. Civ. P. 10(c) as authority for this incorporation. That Rule permits incorporation by reference of "[a] statement in a *pleading*[.]" (emphasis added). "Pleadings" are specifically defined in Fed. R. Civ. P. 7(a), and the list does not include motions or briefs. Therefore, consistent with the ISO, the Court has not considered any "incorporated" arguments.

[19] Some of the defenses are challenged on more than one ground. Survival on the basis of one ground does not preclude judgment on the basis of another ground.

> (ii)     any claim relating to any act or omission of such credit union or the Board
>           as liquidating agent.

The NCUA Board now seeks a ruling that these affirmative defenses constitute "claims" that, like the counterclaims previously dismissed by the Court (*see* Doc. No. 109), are subject to the mandatory administrative claims process. (Doc. No. 197 at 2048.) The Board argues that "a majority of courts, including the Northern District of Ohio, have held that affirmative defenses that constitute a 'claim' are subject to the mandatory administrative claims process." (*Id.* at 2049 (citing cases from district courts in Kansas, Maryland, Indiana, Louisiana, Wyoming, and Ohio).)[20]

The Ciuni defendants argue in opposition that, because the statutory terms "claim" and "action" are clear and unambiguous, and do not encompass "affirmative defense," exhaustion of the administrative process prior to asserting an affirmative defense is not required. (Doc. No. 231 at 7442 (citing *Resolution Tr. Corp. v. Conner*, 817 F. Supp. 98, 99 (W.D. Okla. 1993)).)

As pointed out by all the courts that have interpreted the relevant statutes and their counterparts, "[t]he starting point for interpretation of a statute 'is the language of the statute itself.'" *Kaiser Aluminum & Chem. Corp. v. Bonjorno*, 494 U.S. 827, 835, 110 S. Ct. 1570, 108 L. Ed. 2d 842 (1990) (quoting *Consumer Prod. Safety Comm'n v. GTE Sylvania, Inc.*, 447 U.S. 102, 108, 100 S. Ct. 2051, 64 L. Ed. 2d 766 (1980)). And the reading of a statute is "mandated by the

---

[20] In its motion, the Board repeats twice that *Village of Oakwood v. State Bank & Trust Co.*, 539 F.3d 373, 385-86 (6th Cir. 2008) accepts the "majority position [that] holds that if the administrative process has not been completed, the court lacks jurisdiction to hear those issues, regardless of whether a claim is couched in terms of a counterclaim or affirmative defense." (Doc. No. 197 at 2052.) This Sixth Circuit case discussed the tension between 12 U.S.C. § 1821(d)(6)(A) (the process for reviewing claims against a depository institution) and 12 U.S.C. § 1821(d)(13)(D)(ii) (the broad prohibition against judicial review of claims relating to acts or omissions of the corporation as receiver). The case does not address whether defenses should be treated as claims and, therefore, it adds nothing to the analysis here. The Board also mentions in passing "*Zovko, supra*," with no additional identifying information. In *National Credit Union Board v. Zovko*, 728 F. App'x 567 (6th Cir. 2018), the Sixth Circuit affirmed a ruling of another branch of this court striking certain affirmative defenses. But it did so because appellants "fail[ed] to support their argument with any specificity regarding which affirmative defenses should not have been struck, or *why*[,]" and, therefore, failed to show an abuse of discretion by the district court. *Id.* at 571 (emphasis added). *Zovko* appears to offer no support for the Board's "majority position" argument.

grammatical structure of the statute." *United States v. Ron Pair Enters., Inc.*, 489 U.S. 235, 241, 109 S. Ct. 1026, 103 L. Ed. 2d 290 (1989). But, unfortunately, the cases then focus, not on the language of "claim" or "action,"—which must be *the* starting point—but on language in the statute that modifies those nouns, *i.e.*, "seeking a determination of rights with respect to [] the assets of any [liquidated] credit union[.]" 12 U.S.C. § 1787(b)(13)(D)(i).

Applying the Board's interpretation (that the affirmative defenses are "claims") would have required clairvoyance—a prediction in advance that GIC would be liquidated and that the NCUA Board, as Liquidating Agent, would attempt to hold the Ciuni defendants liable for some or all of the loss to the National Credit Union Share Insurance Fund. It is difficult to fathom the contours of any such predictive administrative claim.

Further, this Court is persuaded by the *Conner* court's interpretation of the exact counterpart statute that addresses failed banks:

> The statute is clear and unambiguous. Therefore, it must be interpreted according to its plain meaning. The word "claim," used as a noun as it is in the relevant statute, ordinarily means a "cause of action." *See Black's Law Dictionary* (5th [e]d. 1979) at p. 224. The word "action" "in its usual legal sense means a suit brought in a court" or "a formal complaint within the jurisdiction of a court of law." *Id.* at p. 26. There can be no doubt that Congress employed the terms "claim" and "action" in their ordinary legal sense inasmuch as Section 1821(d)(13)(D) expressly withdraws from courts jurisdiction over matters over which they would otherwise have jurisdiction. Affirmative defenses do not seek payment nor are they "claims" or "actions," i.e. causes of action. Nor is an affirmative defense an "action seeking a determination of rights." 12 U.S.C. § 1821(d)(13)(D)(i). An affirmative defense may be asserted *in* an action and an affirmative defense may seek or require a determination of rights but it is not an "*action* seeking a determination of rights." 12 U.S.C. § 1821(d)(13)(D)(i) (emphasis added). Had Congress intended to remove from the courts jurisdiction over all actions *in which* a determination of rights in receivership assets is sought or merely to remove from courts jurisdiction over defenses requiring a determination of rights in receivership assets, it would have been a simple matter to do so. Similarly, had Congress intended to remove from the jurisdiction of the courts any and all actions, claims or defenses which might diminish the assets of any depository institution for which the Corporation has been

appointed receiver or diminish or defeat any claims of the Corporation in any capacity, it would been simple to so provide.

*Conner*, 817 F. Supp. at 100. The same can be said for § 1787(d)(13)(D) dealing with failed credit unions.

As also properly pointed out by the Ciuni defendants, not one of these four affirmative defenses seeks actual "payment from" GIC's assets or a "determination of rights with respect to" any such assets. These defenses would do no more than decrease damages for which the Ciuni defendants might be found liable.

The NCUA Board's assertion of lack of jurisdiction as a basis for judgment with respect to the defenses of contributory/comparative negligence, failure to mitigate, set-off, and unclean hands is rejected. To that extent, the motion is denied.

**b.     Lack of Jurisdiction as to Post-Liquidation Claims/Defenses (Eighth [contributory/comparative negligence] and Twenty-Third [unclean hands] Defenses)**

Next the NCUA Board argues that, to the extent the affirmative defenses of contributory /comparative negligence and unclean hands relate to actions of the Liquidating Agent, they are "claims" subject to the administrative claims process.

The discussion in subsection *a* above applies equally and this argument is similarly rejected. To that extent, the Board's motion is denied.

**c.     Inappropriateness of Imputing Others' Actions to Liquidating Agent (Eighth [contributory/comparative negligence], Twenty-Third [unclean hands], and Twenty-Fourth [*in pari delicto*] Defenses)**

The NCUA Board argues that these three affirmative defenses seek to impute the alleged wrongful actions of GIC's officers and/or directors to the Liquidating Agent. (Doc. No. 197 at 2054.) It claims that it is entitled to judgment as a matter of law as to these defenses.

The Board first claims that, for public policy reasons, the majority of courts that have considered the issue have held that the conduct of former employees or agents of a failed financial institution may not be imputed to the receiver or liquidating agent. (*Id*. (citing cases from Alabama and Kansas district courts and from the Fourth and Ninth Circuits).) It further argues that Memmer's criminal conduct cannot be imputed to the Liquidating Agent because that conduct was adverse to GIC's interests and entirely for Memmer's own purposes. (*Id*. at 2059-60.)

Most instructive among the cases cited by the Board is *Comeau v. Rupp*, 810 F. Supp. 1127 (D. Kan. 1992), where the FDIC, as successor-in-interest to a savings and loan association, sued the association's majority shareholders and its accountants claiming that their breach of fiduciary duty caused the association to lose money on loans. The FDIC also claimed that the accountants had negligently and recklessly certified the association's financial statements. The defendant accountants, in turn, claimed that the FDIC could not recover because the association's owners' concealment of material facts was imputed to the FDIC as the association's successor-in-interest, making the FDIC contributorily negligent and subject to the *in pari delicto* defense. In rejecting this argument, the district court noted that the accountants sought to impute conduct to the FDIC for two reasons: to set up a defense of contributory negligence, and to obtain indemnity from the FDIC in the event they were found liable. The court observed:

> In either case, the relief sought by the [a]ccountants would come into play only upon plaintiff's initial showing of some culpable conduct on the part of the [a]ccountants. But by imputing to FDIC the torts of [the association's] officers, the [a]ccountants would shift their liability for plaintiff's losses to the FDIC. Thus, this is not a case where a wholly innocent party will be called upon to pay for a loss caused by another. To the contrary, allowing the FDIC to disavow the wrongful acts of [the association's] former officers prevents culpable parties from transferring liability for their tortious conduct to an entity that is indisputably without fault in bringing about [the association's] losses: the public, in the person of the FDIC.

*Id.* at 1142. The court also noted that the defendant accountants, even without the benefit of imputation, could still argue that the knowledge and actions of others, although not attributable to the FDIC, were the legal cause of any losses, which could not have been prevented by more prudent accounting practices. *Id.*

Similarly, in *Grant Thornton, LLP v. Federal Deposit Insurance Corp.*, 435 F. App'x 188 (4th Cir. 2011), where accountant defendants raised defenses of contributory/comparative negligence and *in pari delicto*, the Fourth Circuit upheld the district court's ruling barring these defenses because

> [p]ublic policy concerns mandate a finding that the duty of FDIC to collect on assets of a failed institution runs to the public and not to the former officers and directors of the failed institution and that it is the public which is the intended beneficiary of FSLIC, just as it is the public which is the beneficiary of the common law duty imposed upon officers and directors to manage properly the institutions entrusted to their [care].

*Id.* at 200 (internal quotation marks omitted).

The Ciuni defendants offer limited argument in opposition, stating only that the wrongdoing they seek to impute to the Liquidating Agent is mere negligence within the scope of the employment of the former officers and directors of GIC, not any independent fraud that, admittedly, could not be imputed. (Doc. No. 231 at 7444-45.) The Ciuni defendants also argue, unconvincingly, that at the very least there is a material factual dispute as to whether Memmer acted "on his own account" or in concert with Grubb (who is a named third-party defendant, but has never appeared or defended). (*Id.* at 7445.) This latter argument is easily rejected since, whether or not Memmer may have acted in concert with another, his actions were quite clearly adverse to GIC.

The Court concludes that the NCUA Board's position is correct. The actions of the former officers and directors cannot be imputed to the Board in its role as Liquidating Agent and, therefore, it is entitled to judgment on the pleadings on the affirmative defenses of contributory/comparative negligence, unclean hands, and *in pari delicto*. To that extent, the Board's motion is granted. That said, as noted by the court in *Rupp*, there is "[no] inequity in withdrawing from the [a]ccountants' litigation arsenal a defense that would normally be available[,]" since it "does not lessen plaintiff's burden to prove that its losses were caused by the [a]ccountants' wrongful conduct." *Rupp*, 810 F. Supp. at 1142.

**d.** **Summary Judgment (Eighth [contributory/comparative negligence], Ninth [intervening and/or superseding acts], Tenth [failure to comply with various federal statutes], Eleventh [failure to comply with various federal regulations], Nineteenth [set-off], and Twenty-Third [unclean hands] Defenses)**

Finally, the NCUA Board argues that, if it is not entitled to judgment on the pleadings with respect to the various affirmative defenses, it *is* entitled to summary judgment with respect to six of them because they are factually insufficient. (Doc. No. 197 at 2061.) Since the eighth and twenty-third defenses have already been rejected in the previous section, the Court will address only the remaining four.

**1)** **Intervening and/or Superseding Acts (Ninth Defense)**

The NCUA Board argues that it is entitled to summary judgment with respect to the ninth affirmative defense because, although typically the issue of intervening causation is a question of fact, "in this case, after reviewing the evidence, no reasonable person could conclude that the actions of any third party breaks the chain of causation." (Doc. No. 197 at 2065.) It further asserts that "there can be no question that it is foreseeable that an auditor's negligence in failing to discover fraud will allow that fraud to continue." (*Id.*)

In opposition, the Ciuni defendants claim that "the fraudulent acts of Memmer and/or the negligent management of G.I.C. by the credit union's former officers and directors were intervening causes, thus breaking the chain of causal connection." (Doc. No. 231 at 7448.) Citing *Smith v. Dayton Builders Supply, Inc.*, No. 12835, 1991 WL 262684 (Ohio Ct. App. Dec. 11, 1991), they assert that Memmer's fraud constitutes a superseding cause "unless [the NCUA Board] . . . was able to prove that, at the time of [its] negligence, [C&P] . . . realized or should have realized that a lack of internal accounting controls might create a situation which afforded an opportunity for an employee to [engage in fraud] and that an employee might avail himself of that opportunity." (Doc. No. 231 at 7449 (quoting *Smith*, 1991 WL 262684 at *3).) They argue that, at the very least, there is a question of fact as to whether they should have been able to foresee Memmer's fraudulent (*i.e.*, criminal) behavior. (*Id.* at 7450.)

As pointed out by the NCUA Board in its reply brief: "The question is *not* whether [an] act is criminal. The correct question is whether the act is foreseeable." (Doc. No. 238 at 7784 (emphasis in original).) Under Ohio law, "an intervening act must be unforeseeable in order to break the causal connection and therefore relieve a defendant of all liability for its negligence." *Harris v. St. Vincent Med. Ctr.*, 205 F.3d 1340 (Table), 2000 WL 178395, at *3 (6th Cir. 2000). Further, "an intervening act is deemed to be a superseding cause which breaks the chain of causation only if the intervening act is not brought into operation by the original wrongful act, but [operates] entirely independent[ly] thereof; it must be such a cause as would have produced the result, without the co-operation of the original wrong." *Id.* (internal quotation marks and citations omitted).

As the NCUA Board points out, "that an auditor's negligence in failing to discover fraud will allow that fraud to continue is foreseeable." (Doc. No. 238 at 7785 (citing cases).) The NCUA

Board's position is that, although damages would have resulted from Memmer's fraud, the Ciuni defendants' failure to timely discover that fraud when it first began to occur caused any damages to multiply—a breach of professional duty for which the Ciuni defendants must be held liable, and which precludes the application of this affirmative defense. In addition, the NCUA Board notes that, in planning memos prepared in advance of each year's audit, the Ciuni defendants specifically identified the lack of several internal accounting controls that might put the credit union at risk by Memmer and Grubb. (*See, e.g.,* Doc. Nos. 238-3 & 238-4; *see also* Doc. No. 238-5, Deposition of Sheila Birch at 7832-37.)

The NCUA Board has the better view and is entitled to summary judgment with respect to the ninth affirmative defense. To that extent, its motion is granted.

### 2) Failure to Comply with Federal Statutes and Federal Regulations (Tenth and Eleventh Defenses)

The Ciuni defendants assert in the Tenth Affirmative Defense that "[p]laintiff's [c]omplaint is barred by [p]laintiff's failure to comply with 12 U.S.C. §§ 1756, 1757, 1761b, 1761d, 1784a, 1784f, and 1790d." (Doc. No. 10 ["Answer"] ¶ 129.) In the Eleventh Affirmative Defense they assert that "[p]laintiff's [c]omplaint is barred by [p]laintiff's failure to comply with 12 C.F.R. § 700 *et seq.*" (*Id.* ¶ 130.)

The NCUA Board argues that these defenses are overly broad, contending violation by GIC's former officers and directors of seven federal laws and approximately 100 federal regulations, and that, in any event, there is no record evidence to support them. (Doc. No. 197 at 2066-67; Doc. No. 238 at 7794.)

In opposition, the Ciuni defendants assert that "[o]ne need look no further than the depositions of virtually any Board member and/or Supervisory Committee 'member' to uncover

that they had no understanding that they owed duties to G.I.C., what those duties might be, and that their fiduciary duty was of a serious nature." (Doc. No. 231 at 7452 (citing, without pinpoint references, "Depositions of Grubb, Paugh, Call, Lumpkin, and Carek").)

The Court need not devote much time to these defenses, which, indeed, are *more* than overly broad. Further, given the Ciuni defendants' complete failure to point to *anything* specific in the record, beyond a general reference to the depositions, these defenses cannot survive. The Court need not search the record in a manner that defendants themselves declined to do, apparently in recognition of the utter insupportability of these defenses. *See Street v. J.C. Bradford & Co*., 886 F.2d 1472, 1479-80 (6th Cir. 1989) ("The trial court no longer has the duty to search the entire record to establish that it is bereft of a genuine issue of material fact.").

The NCUA Board is entitled to summary judgment with respect to the tenth and eleventh affirmative defenses and, to that extent, its motion is granted. That said, as already noted, elimination of these two very broad defenses "does not lessen plaintiff's burden to prove that its losses were caused by the [a]ccountants' wrongful conduct." *Rupp*, 810 F. Supp. at 1142.

### 3) Set-Off (Nineteenth Defense)

The NCUA Board very briefly argues that it is entitled to summary judgment with respect to the nineteenth affirmative defense because, due to the Ciuni defendants' failure to pursue the administrative process for any potential claims, the Liquidating Agent "does not owe anything" to the Ciuni defendants to serve as a set-off against any potential liability. (Doc. No. 197 at 2066.)

In an equally brief opposition, the Ciuni defendants argue that "with no real analysis on the issue, [p]laintiff has failed to demonstrate that it is entitled to judgment as a matter of law[.]" (Doc. No. 231 at 7451.) They do not, however, dispute that they are owed nothing by the Liquidating Agent, nor do they identify any third person from whom they might be entitled to set-off.

The NCUA Board has the correct position. It is entitled to summary judgment with respect to the nineteenth defense of set-off.

### e.  Conclusion Regarding Doc. No. 197

For the reasons set forth, Doc. No. 197 is granted in part and denied in part.

### 3.  Doc. No. 198 - The 2007 Audit

The NCUA Board seeks summary judgment with respect to the Ciuni defendants' liability relative to the 2007 financial audit of GIC based upon the absence of any work papers for that audit. (Doc. No. 198 at 2206). In light of the Court's ruling that all claims relating to the 2006 and 2007 audits are time-barred, the Board is not entitled to summary judgment.

In addition, even if a reviewing court were to determine that the 2007 audit claim were not time-barred, as properly pointed out by the Ciuni defendants in their opposition to this motion, the mere absence of work papers, even if proven to be a deviation from the requisite standard of care, does not automatically establish the necessary causal link to find the Ciuni defendants liable for injury to the Board. As a result, even if the claim were not time-barred, the Board would not be entitled to summary judgment but would be required to prove its case before a fact-finder.

Doc. No. 198 is denied.

### 4.  Doc. No. 206 - Smolko's Motion

Defendant Smolko seeks summary judgment for two reasons. Only the second will be discussed in any detail.

### a.  Statute of Limitations

First, Smolko argues that any claim based upon the 2006 and 2007 audits is time-barred. (Doc. No. 206 at 5469.) In opposition, the NCUA Board simply claims that Smolko is incorrect.

(Doc. No. 228 at 7331.) But the Court has already decided otherwise and need not discuss the issue further.

### b.    Liability

Second, Smolko claims he is entitled to summary judgment because the record establishes that he possesses no liability as he was not involved in any of the audits at issue, namely, the 2006, 2007, and 2008 audits. (Doc. No. 206 at 5470-71.)

In opposition, the NCUA Board declares that there is a genuine issue of material fact since "Smolko's Motion does not resolve the issue of liability for damages arising from [d]efendant Cuini [sic] & Panichi's conduct of audits in the years 2006, 2007, 2008, and every subsequent year that [d]efendants performed work and issued clean audit opinions, including audit years 2009 and 2010." (Doc. No. 228 at 7331.) The NCUA Board declares that Smolko was the supervisor for the 2010 audit, and "[b]ut for the issuance of a final unqualified audit opinion, the continued existence of GIC beyond the conclusion of the 2010 audit would not have occurred." (*Id.* at 7332.) Maybe so, but that is completely irrelevant since the 2010 audit is not at issue in this case, despite the Board's unfounded assertion that "[t]he audits from years 2006, 2007, 2008, 2009 and 2010 are at issue in this case." (*Id.* at 7335.) As discussed below, the complaint alleges otherwise, and Board cannot amend the complaint by cleverly weaving in arguments about years beyond 2008.

Although the complaint alleges that GIC's insolvency was not *discovered* until 2012 (Compl. ¶ 14), all the claims are based upon the Ciuni defendants' alleged failure "to discover that millions of dollars of GIC assets that [d]efendants reported on their published financial statements for each of the years 2006, 2007 and 2008 did not exist." (*Id.* ¶ 16.) The NCUA Board, as Liquidating Agent, claims to have "identified numerous acts and omissions by [d]efendants in connection with C&P's audit engagements for fiscal years 2006, 2007 and 2008, each constituting

professional negligence, gross negligence and breach of contract." (*Id.* ¶ 17.) In paragraphs 47 through 70, the NCUA Board sets forth the factual allegations relating to "GIC's Audits and Audit Reports," notably alleging that "the financial statements materially misstated GIC's financial condition in each year for which C&P published audited financial statements, namely the following years relevant to [p]laintiff's damages brought in this [c]omplaint: December 31, 2006, December 31, 2007 and December 31, 2008." (*Id.* ¶ 57.) In subsequent paragraphs, the Board outlines all of the Ciuni defendants' alleged failures with respect to the 2006 audit (*id.* ¶ 78), the 2007 audit (*id.* ¶ 79), and the 2008 audit (*id.* ¶ 80), concluding with the following allegations, before setting forth the individual counts:

> 85. If [d]efendants had properly completed the 2006 Audit, the damages would have been substantially less.

> 86. If [d]efendants had properly completed the 2007 Audit, while [d]efendants would still have had liability, the damages would have been less.

> 87. If [d]efendants had properly completed the 2008 Audit, while [d]efendants would still have had liability, the damages would have been less.

> 88. Defendants also failed to complete any audit subsequent to 2008, despite being engaged to do so.

The complaint then outlines five counts. Count 1, for professional negligence, alleges that "[b]ut for [d]efendants' negligent acts and omissions, [d]efendants would have detected Memmer's substantial and material misstatements of GIC's assets in 2006, 2007 and 2008[,]" and "GIC would have been deemed insolvent and immediately liquidated by the NCUA Board." (*Id.* ¶¶ 93-94.) Count 2, for gross negligence, alleges that "[d]efendants' actions *in committing the acts described above* demonstrated a complete absence of care, a conscious disregard and indifference to the rights of GIC and its members, and an utter disregard for prudence amounting to gross negligence and recklessness." (*Id.* ¶ 97 (emphasis added).) Although Count 2 contains no time

34

parameters, it clearly references "acts described above," which include only acts relating to the 2006, 2007, and 2008 audits. Counts 3, 4, and 5 set forth breach of contract claims, one for each year: 2006, 2007, and 2008.

Notwithstanding the single passing mention in paragraph 88 that "[d]efendants also failed to complete any audit subsequent to 2008, despite being engaged to do so[,]" there is no claim relating to any year beyond 2008. Paragraph 88, standing alone in a 119-paragraph complaint, cannot be broadly read to require a construction of the complaint that would incorporate audit years beyond 2008.

As admitted by the NCUA Board, "the evidence plainly shows that Mr. Smolko was involved in the GIC audits beginning in 2010." (Doc. No. 228 (citing Doc. No. 202-1 ["Smolko Dep."] at 17:11-15.) There is no way that Smolko could be found liable for anything relating to the 2006, 2007, and/or 2008 audits. Smolko is entitled to summary judgment.

Doc. No. 206 is granted.

### III. CONCLUSION

For the reasons set forth herein: Doc. No. 196 is denied and Doc. No. 205 is granted—all claims relating to the 2006 and 2007 audits are time-barred, leaving only claims relating to the 2008 audit. Doc. No. 197 is granted in part and denied in part—judgment on the pleadings is granted in favor of the NCUA Board with respect to the defenses of contributory/comparative negligence, intervening and/or superseding acts, unclean hands, *in pari delicto*, set-off, failure to comply with federal statutes, and failure to comply with federal regulations. Doc. No. 198 is denied because the 2007 audit is time-barred. Doc. No. 206 is granted because Robert Smolko had no involvement with the three audits at issue.

The only claims remaining for trial are the professional negligence claim, the gross negligence claim, and the breach of contract claim (subject to a four-year statute of limitations) against Ciuni & Panichi, Inc., Lynn A. Basconi, and Charles Ciuni relating to the 2008 audit. Robert J. Smolko is dismissed as a party. In light of all the rulings over the course of proceedings in this case, available affirmative defenses include failure to join necessary/indispensible parties (sixth defense), no legally cognizable duty between C&P and the NCUA Board (seventh defense), damages caused by persons or entities not controlled by C&P (twelfth defense), assumption of the risk (thirteenth defense), lack of good faith (sixteenth defense), impracticability/impossibility/frustration of purpose (seventeenth defense), and failure to mitigate (eighteenth defense).

**IT IS SO ORDERED**.

Dated: January 11, 2019

_____
**HONORABLE SARA LIOI**
**UNITED STATES DISTRICT JUDGE**